[Filed December 23, 1886.]

## G. H. TURNER et al. *v.* E. P. PARKER.

Boundary—Meander.—To "meander" means to follow a winding or flexuous course, and where a donation land claim is described as "beginning at a stake at low water mark * * * thence with the meander of the river," by courses which, if run in straight lines from station to station, would not adhere strictly to the water line, the language used must be understood to mean a line which follows the sinuosities of the river—that the river is the boundary of the land between the points indicated.

Clatsop County. Defendant appeals. Affirmed.

*C. W. Fulton* and *R. Williams,* for Appellant.

*R. L. McKee,* for Respondent.

Lord, C. J.—This was an action of ejectment, to recover a small strip of land described in the complaint. The only question is, whether or not the tract of land in dispute is within the boundaries of the McClure Donation Land Claim. It is stipulated that if it was, the plaintiffs are the owners of it; but that to determine this, it was necessary to ascertain the true northern boundary of that claim; and if the river is the bound-

ary, then the tract of land in dispute is owned by the plaintiffs.

The land claimed and notified is described thus: "Beginning at a stake at low water mark in the bay of Shallows, at Astoria, 7 chs. N. of Shively's N. W. corner * * * thence with the meander of the river: 1st N. 60 deg. W. 20.00 chs. to Shark's Point; 2d, N. 85 deg. W. 30.00 chs ; 3d, S. 60 deg. W. 18.50 chs.; 4th, W. 2.00 chs. to a stake," &c. To follow the calls of the survey by metes and bounds, that is, by straight lines from one point to the other, as indicated above, the tract in dispute would not be included in the donation claim; but if the intention was to meander, then the river is the boundary, and includes the tract in controversy.

To meander means to follow a winding or flexuous course ; and when it is said: "Thence with the meander of the river," &c., it must mean a meandered line—a line which follows the sinuosities of the river—or in other words, that the river is the boundary of the land claim between the points indicated. (Schurmeier v. Railway, 10 Minn. 100–102.) It seems to us this is the obvious construction of the language, and the plain intention, in the light of all the facts, as suggested at the argument.

In County of St. Clair v. Lovingston, 23 Wall. 64, Mr. Justice Swayne, in delivering the opinion of the court, said : "It may be considered a canon in American jurisprudence, that when the calls in a conveyance of land are for two corners at, in, or on a stream or its bank, and there is an intermediate line extending from one such corner to the other, the stream is the boundary, unless there is something which excludes the operation of the rule, by showing that the intention of the parties was otherwise. Survey 597 is the elder one. Its calls are : ' Beginning on the bank of the Mississippi river, &c. * * thence S. 5 W. 160 chains to a point on the river,' &c. It will be observed that the beginning corner is on the bank of the river. The second corner is a point on the river. The line between them is a straight one. Where the corner, as described, would have fixed the line does not appear. There was an ob-

vious benefit in having the entire front of the land extend to the water's edge. There was no previous survey or ownership by another, to prevent this from being done. No sensible reason can be imagined for having the two corners on the river, and the intermediate line deflect from it. Under the circumstances, we cannot doubt that the river was intended to be made, and was made, the west line of the survey. In the light of the facts, such is our construction of the calls of the survey, and we give them that effect. The calls of Survey No. 786, as respects this subject, are: 'Thence N. 85 deg. W. 174 poles, to a point *on the bank of the Mississippi river*, from which * thence N. 5 deg. E. up the Mississippi river, and binding therewith,' &c. Here the calls, as to the river, are more explicit than in Survey 579. The language, 'up the Mississippi river and binding therewith,' leaves no room for doubt. Discussion is unnecessary. It could not make the result clearer. The river must be held to have been the west boundary of this survey also." It seems to us that the question raised was, What was the legal import and significance of the words employed? And this was properly a matter for the decision of the court in the light of the facts. The judgment must be affirmed.