[No. 10781. *En Banc.* October 25, 1913.]

COMMISSIONERS COMMERCIAL WATERWAY DISTRICT NO. 2 OF
KING COUNTY, *Respondents*, v. SEATTLE FACTORY
SITES COMPANY *et al.*, *Appellants.*[1]

EMINENT DOMAIN—WATERWAY DISTRICTS—PROCEEDINGS—TRIAL—
DAMAGES AND BENEFITS—SEPARATE ISSUES. Under chapter 11 of Laws
1911, p. 11 (3 Rem. & Bal. Code, § 8166a *et seq.*), providing that, in
proceedings to establish a commercial waterway district, the jury
shall make a separate assessment of damages for land taken or dam-
aged, and shall further find a maximum amount of benefits to be
derived by each landowner to be levied as a special assessment, the
proceedings, while in form one case, is in substance the trial of two
separate classes of issues; first, the question of compensation, and
second, the question of benefits, which are properly tried and sub-
mitted to the jury separately.

SAME—PETITION. In proceedings to establish a commercial water-
way district, under Laws 1911, p. 11 (3 Rem. & Bal. Code, § 8166a
*et seq.*), the estimates of benefits to the various tracts, stated in
the original petition, are in no sense assessments, but are mere alle-
gations, and property owners cannot be prejudiced by the fact that
the commissioners proceeded upon an erroneous theory in estimat-
ing the alleged benefits.

SAME—JURY TRIAL—SEPARATE TRIALS. There is no constitutional
right to a jury trial on the issue of the benefits received in pro-
ceedings to establish a commercial waterway district, and the stat-
ute providing that the jury shall determine the benefits does not
provide for separate trials as to each tract; hence separate trials
cannot be demanded.

SAME—BENEFITS — TRIAL — SUBMISSION OF ISSUES — FORM OF VER-
DICT. In proceedings to establish a commercial waterway district,
it is proper to submit to the jury, on the trial of the issue of benefits,
a printed form of verdict containing printed descriptions of the tracts
claimed to be benefited, with the amounts of the maximum benefits,
as claimed in the petition, printed opposite the respective descrip-
tions, where objecting landowners were respectively permitted to
prepare and submit separate verdicts in such form as they claimed
the jury should find, and where the jury were instructed that they
were not bound by the amounts inserted in the verdicts submitted.

SAME—PURPOSES—BENEFITS—DETERMINATION. A commercial wa-
terway district may be established for the combined purposes of

[1] Reported in 135 Pac. 1042.

commercial waterways and drainage projects, and the benefits may be measured by reference to both or either source, under Laws 1911, p. 19, § 7 (3 Rem. & Bal. Code, § 8172a), providing that the commissioners shall have power to improve all water courses in the district whether navigable or otherwise, and to construct ditches, canals, dykes, etc., to protect lands from overflow or to assist in the maintenance of the commercial waterway system.

SAME—BENEFITS—VERDICT—APPEAL—REVIEW.  In proceedings to establish a commercial waterway district, the findings of the jury as to benefits, upon involved and conflicting evidence, will not be disturbed on appeal, although the court might have determined the issues differently as an original proposition.

BOUNDARIES — WATER COURSES — "BANKS."  A proprietor whose lands are described as extending to the "south bank" of a stream has no right to the bed of the stream so as to give him any title to the gravel therein.

NAVIGABLE WATERS—STREAMS—TITLE TO BEDS.  A riparian owner upon a navigable stream has no title to the gravel in the bed of the stream, in view of Const., art. 17, § 1, asserting title in the state to the beds of all navigable waters.

SAME—RIGHT TO NAVIGATION—INJURY—STORAGE OF WATERS.  The temporary diversion of waters of a stream into a lake, which would thereby act as a reservoir during flood periods, after which the waters would pass down the stream, cannot be said to affect the navigability of the stream so as to be an injury to the rights of navigation.

APPEAL—BRIEFS—REFERENCE TO STATEMENT—EVIDENCE.  Error in findings of fact upon the evidence will not be considered on appeal where the brief fails to make references to the statement of facts where the evidence upon the points in question may be found.

EMINENT DOMAIN—WATERWAY DISTRICTS—COMPENSATION—RIGHT TO PURCHASE SHORE LANDS—ISSUES.  In proceedings to establish a commercial waterway district, a littoral owner upon a lake whose land, described as extending to the meander line, was taken, and who also owned shore lands purchased from the state, is entitled to recover damages only for the lands included within the meander line, as described in the petition and judgment, and not for loss of a preference right to purchase abutting shore lands that may be uncovered by pending proceedings to lower the level of the lake, where it is uncertain whether there are any existing shore lands beyond such meander line, or whether any will be added in the future, and if so, they were not sought to be condemned, nor included in the judgment; since the owner's right to purchase shore lands does not depend upon ownership of the upland, but such shore lands are automatically added to the present shore lands by extending the line of navigability, and since they are not adjudicated in the judgment and may be left to future litigation.

Appeal by defendants from a judgment of the superior court for King county, Main, J., entered March 16, 1912, upon the verdicts of a jury awarding damages and determining the benefits in condemnation proceedings for a commercial waterway, after a trial on the merits. Affirmed.

*Ballinger, Battle, Hulbert & Shorts, Peters & Powell, Byers & Byers, Hastings & Stedman, Milo A. Root, William Martin,* and *Hugh C. Todd,* for appellants Branigan and Seattle Factory Sites Company.

*Bamford A. Robb,* for appellant Lake Gravel Company.

*Million & Houser* and *William A. Crain,* for respondents.

*Shorett, McLaren & Shorett, amici curiae.*

PARKER, J.—This is an eminent domain and special assessment proceeding, prosecuted in the superior court for King county, looking to the acquisition of a right of way for, and the construction of, a waterway in commercial waterway district No. 2, of King county, and the levying of the cost thereof by special assessment upon the property within that district benefited thereby. Some of the defendants, conceiving themselves to be aggrieved by the verdicts of the jury and the judgment of the superior court rendered thereon, upon the question of damages awarded for the taking of their property for the right of way, and also upon the question of the amount of maximum benefits resulting to their property from the construction of the waterway, have appealed to this court.

Commercial waterway district No. 2 lies at the southerly end of Lake Washington. It is approximately one and one-half by three miles in territorial extent, and includes the town of Renton, with some adjoining territory. The Black river flows through the district in a general southwesterly direction, and at normal stages of water, constitutes the outlet of Lake Washington, flowing out of Lake Washington at its extreme southerly end. The Cedar river flows through the district in a general northwesterly direction, empting into Black

river at a point about one-half mile from the southerly end of Lake Washington, the source of the Black river. At certain seasons, when the waters of Cedar river are at a normal height, the waters of Black river are so raised that they flow into, instead out of, Lake Washington; Black river at such times forming what might be termed the arms of a delta to Cedar river, one of which flows into Lake Washington and the other into the Duwamish river and Puget Sound.

The proposed waterway is about one and one-quarter miles long, and when constructed will divert and carry all of the waters of Cedar river directly into Lake Washington a short distance east of where Black river flows out of that lake. While this will not, under present conditions, lessen the quantity of water flowing in Black river, it will cause a more regular flow therein, especially during the seasons of high water in Cedar river, by reason of the fact that Lake Washington will constitute a large reservoir in which the waters of Cedar river may spread out and flow more gradually into Black river. By this method, flood conditions will be relieved within the district.

It incidentally appears in the record of this case that the government of the United States is carrying forward a project looking to the lowering of the waters of Lake Washington several feet below its present normal level. This contemplated project is to be accomplished by the building of what is known as the Lake Washington canal, connecting the northerly part of the lake with Puget Sound. Should such a project be completed after the completion of this waterway, it seems highly probable that little, if any, water will then flow from Lake Washington out through Black river, since the overflow of Lake Washington would then pass out through the government canal. This government project, however, is entirely independent of this waterway, in so far as we are here concerned with the question of damages and benefits resulting from the construction of this waterway. The manifest purpose of the construction of this water-

way is to create a navigable waterway for the benefit of the town of Renton and surrounding territory, and also to relieve that town and surrounding territory from flood conditions existing during the high water stages of Cedar river. This is the theory upon which special benefits are claimed to result to the property within the waterway district, warranting the charging of the cost of the waterway to the property therein by local assessment. It is claimed by the waterway commissioners that a large portion of the property in the district will receive special benefits from relieved flood conditions, and that all of the property in the district will receive more or less special benefits by reason of its proximity to the waterway, from the commercial and increased value benefits thereby resulting to such property.

It will be conducive to an understanding of the problems here for solution to have before us at the outset the main features, so far as here involved, of the law under which this proceeding is being prosecuted. Ch. 11, at page 11, Laws of 1911 (3 Rem. & Bal. Code, § 8166a *et seq.*). By § 7 of that law, the waterway commissioners are given powers, among others, as follows:

"(b)  Said board of commissioners herein provided shall have the right, power and authority to straighten, widen, deepen and improve any and all rivers, watercourses, streams, whether navigable or otherwise, flowing through or located within the boundaries of said district.

"(c)  To construct all needed and auxiliary ditches, canals, flumes, locks, dykes, and all other artificial appliances in the construction of a commercial waterway system, and which may be necessary or advisable to protect the land in any commercial waterway district, from overflow, or to assist and become necessary in the preservation and maintenance of such commercial waterway system." Laws 1911, p. 19, § 7 (3 Rem. & Bal. Code, § 8172a).

And to this end, may be exercised the power of eminent domain. It is manifest from these provisions that such waterways may be constructed, not only for the purpose of furnish-

ing navigable waterways to the localities where constructed, but also for the purpose of drainage and protection of land within the district from overflow. This waterway is sought to be constructed to the end that the property within the district will be benefited more or less in both of these ways. Section 11 provides for the institution of condemnation and assessment proceedings as follows:

"Sec. 11.  Whenever it is desired to prosecute the construction of a system of waterways within said district, said district, by and through its board of commissioners, shall file a petition in the superior court of the county in which said district is located, setting forth therein the route or routes over which the same is to be constructed, with a reasonably accurate description thereof, together with the estimated cost of such proposed improvement, showing therein the names of the land owners whose lands are to be benefited by such proposed improvement, the description of the land owned by each such land owner, and the maximum amount of benefits to be derived by each such lot, tract or parcel of land set forth therein from the construction of said proposed improvement, and that the same will be conducive to the public health, sanitation, convenience and welfare and increase the value of all of said property for purposes of public revenue. Said petition shall further set forth a reasonably accurate description of the tracts or parcels of land or property which will be taken or damaged by said improvement, and the names of the owners and occupants thereof; . . ." Laws 1911, p. 24, § 11 (3 Rem. & Bal. Code, § 8176a).

Section 13, p. 25 (Id., § 8177-1), provides for the issuing and service of summons upon all owners of property sought to be taken or damaged, as well as upon all owners of property claimed to be benefited, to the end that the former may be heard upon the question of their compensation and damages, and that the latter may be heard upon the question of their benefits. Section 14 provides for trial by jury upon both of these questions, and that,

"The jurors at such trial shall make in each case a separate assessment of damages which shall result to any person, corporation or company, or to the state, by reason of the ap-

propriation and use of such land, real estate, premises or other property for said improvement and shall ascertain, determine and award the amount of damages to be paid to said owner or owners, respectively, and to all tenants, encumbrancers and others interested, for the taking or injuriously affecting such land, real estate, premises or other property for the establishment of said improvement; and shall further find a maximum amount of benefits per acre or per lot or tract to be derived by each of the land owners. And upon a return of the verdict into court the same shall be reported as in other cases; whereupon, a decree shall be entered in accordance with the verdict so rendered, setting forth all the facts found by the jury, and decreeing that said property be appropriated, and directing the commissioners of the district to draw their warrant on the county treasurer for the amount awarded by the jury to each person for damages sustained by reason of the establishment of said improvement, payable out of the funds of said district." Laws 1911, p. 27, § 14 (3 Rem. & Bal. Code, § 8177-2).

Section 28 provides, in substance, that the judgment or decree rendered upon the verdict finding the maximum benefits be certified to the county auditor, to the end that the same may be entered upon the tax rolls of the county for collection as special assessment taxes, such assessments, however, "shall not become due and payable except at such time or times and in such amounts as may be designated by the board of commissioners of said district."

Section 20, p. 31 (Id., § 8184-2), provides for appeal to this court from either the award of compensation and damages or the assessment of maximum benefits, by any defendant deeming himself aggrieved thereby. From these provisions of the law, it is plain that, while the proceeding in the superior court is in form one case, it is, in substance, for the trial of two separate classes of issues to be determined by the jury, each to be uninfluenced by the other so far as the ultimate results to be reached are concerned. First, the jury is to determine the question of compensation and damages resulting to the several owners of the property to be taken for the improvement.

As to this issue, the jury is acting, and their function is the same, as if awarding compensation or damages in an ordinary eminent domain proceeding. This is simply the trial of a question as to which the right of trial by jury is provided by § 16, article 1 of our state constitution. Second, the jury is to determine the maximum benefits resulting to each tract or parcel of property within the district which it finds to be benefited by the construction of the improvement. As to this issue, the jury is acting in a capacity not unlike that of city authorities in making and confirming a local assessment roll, combining the making of the roll and the final hearing upon its confirmation all in one, after hearing all parties, the law giving such parties opportunity to be heard and introduce evidence upon this issue as well as upon the issue of compensation and damages in the eminent domain branch of the proceedings. This, however, we will find as we proceed, is not a constitutional *jury* question. Recognizing the separateness of these two classes of issues, the superior court very properly caused them to be tried and submitted to the jury separately—first the question of compensation and damages, and thereafter the question of benefits.

Some contention is made by counsel for appellants whose several tracts are charged by the verdict and judgment with benefits that the commissioners proceeded upon an erroneous theory in estimating and stating in their original petition the amount of maximum benefits resulting to the several tracts and parcels. Counsel loosely refer to these estimates, stated in the commissioners' petition, as assessments; when, in fact, they are nothing more than allegations of the commissioners, going to make up their cause of action claimed by them against the several owners. These statements, or we might more properly say allegations, made by the commissioners in their petition, are in no sense assessments. They are nothing more than allegations of the amounts the commissioners claim the maximum benefits will be, resulting from the construction of the waterway. The theory upon which the commis-

sioners arrived at their conclusions as to what they would claim the maximum benefits to be, appeared in their testimony, given in support of their allegations in that behalf upon the trial of this issue before the jury. We are wholly at a loss to understand how appellants could be prejudiced by the process of reasoning which the commissioners may have employed in arriving at their conclusions as to the amounts of maximum benefits they alleged in their petition initiating the proceeding. Such a contention could as well be made against any plaintiff stating a cause of action in his complaint upon which he demands a verdict and judgment. Whether the jury erroneously found the amounts of maximum benefits, which finding happens to agree with those alleged by the commissioners in their petition, is quite another question. Indeed, this is nothing more than a question of the sufficiency of the evidence to support the jury's finding. The hearing upon this issue before the jury was not the hearing of an appeal from the conclusions of the commissioners as alleged in their complaint, like the hearing of an appeal from a municipal assessment. It was an original trial before the jury for the purpose of determining the maximum benefits; and the allegations of the commissioners' petition as to such benefits was simply the first pleading tendering that issue. Clearly this contention is without merit.

At the beginning of the trial of the branch of the case involving the question of maximum benefits, appellants whose several tracts were sought to be charged with benefits demanded separate jury trials upon that issue, which demand was by the court overruled. This is assigned as error. We find nothing in the provisions of the law awarding to appellants a jury trial on this question suggesting that they are entitled to separate jury trials thereon. We have already pointed out that this is the trial of an issue wholly different in its nature from that involved in the determining of compensation and damages in the eminent domain branch of the proceeding. This court has held, in harmony with the gen-

eral rule, that there is no constitutional right of trial by
jury in determining benefits in special assessment proceed-
ings. *In re Jackson Street*, 62 Wash. 432, 113 Pac. 1112;
1 Page and Jones, Taxation by Assessment, §§ 202, 272.
Manifestly this does not belong to that class of issues as to
which "the right of trial by jury shall remain inviolate,"
since this issue was not triable by jury at common law, nor
even by statute at the time of the adoption of our constitu-
tion. Const., art. 1, § 21; *State v. Strasburg*, 60 Wash. 106,
110 Pac. 1020, Ann. Cas. 1912 B. 917, 32 L. R. A. (N. S.)
1216. It seems clear to us that, whatever the right of trial
by jury may be on this question, it is only such as the legis-
lature has granted by statute. The legislature would have
satisfied all constitutional requirements in that regard had it
provided for the determining of maximum benefits, upon due
notice and hearing, by some board or tribunal, entirely with-
out the aid of a jury, as it has in ordinary local assessment
proceedings. Had the legislature so provided, we apprehend
that no one would even suggest that a separate trial would,
under any circumstances, be awarded to the property own-
ers upon such a question. We are of the opinion that appel-
lants were not entitled to separate trials as demanded, on
the question of benefits, whatever their rights might have
been in that regard in the eminent domain branch of the case.

It is contended by counsel for appellants that the superior
court erred in submitting to the jury a form of verdict with
the amounts of maximum benefits printed therein, following
each printed description of land, as claimed by the commis-
sioners in their petition. We do not have in the record be-
fore us any copy of the form of verdict which is claimed to
have been submitted by the court to the jury, nor do we have
even a copy of the verdict as returned by the jury. The copy
of the judgment finally entered by the court contains our only
information as to what findings the jury made on the ques-
tion of benefits. Certain objections made by counsel for ap-
pellants at the time of the submission of this branch of the

case to the jury, and the remarks of the court thereon found
in the statement of facts, point to the occurrence of the fol-
lowing, in substance:   Counsel for the commissioners pre-
pared a form of verdict for submission to the jury which
contained printed descriptions of the several thousand tracts
claimed to be benefited, with the amounts of the maximum
benefits, as claimed by the commissioners in their petition,
printed opposite the respective descriptions in the submitted
verdict.   Submission of this form of verdict being objected
to, the court permitted counsel for all defendants so object-
ing, to prepare separate verdicts for their respective clients
in such form as they claimed the jury should find.   These
forms were submitted to the jury with the form prepared by
counsel for the commissioners, and the jury fully and fairly
instructed by the court to the effect that the amounts in-
serted in the verdict submitted by counsel for the commis-
sioners were simply the amounts claimed by them as the
maximum benefits.   The instructions of the court rendered it
especially plain that the insertion of these amounts was in no
sense binding on the jury.   So far as we can see from the
record before us, all of this amounted to nothing more than
the court's submitting to the jury forms of verdicts prepared
by counsel for the respective parties, such as they claimed
their respective clients were entitled to have returned.   The
jury could not have understood otherwise in the light of the
court's instructions.   It is worthy of note in this connection
that there were several thousand defendants, owning some
six or seven thousand separate lots or tracts, each of which
was necessarily separately described, and as to each of which
maximum benefits were required to be separately found, and
that only very few of the defendants, about a dozen, were
contesting the amounts of the claimed maximum benefits
made by the commissioners.   As to all who were not contest-
ing the claims of the commissioners as made in their petition
and testimony, it might well be assumed that the jury would
find in accordance therewith.   But even as to these, and espe-

cially as to all who were contesting, the jury had ample opportunity to make fair findings entirely freed from any suggestion or comment by the court as to its views of the amounts they should so find. Clearly there was no prejudice flowing from this manner of submitting forms of verdict to the jury. In view of the vast number of separate amounts of maximum benefits involved, and the fact that this was not the trial of an issue by the jury as at common law, as we have noticed, we think the course taken by the learned trial court is to be commended rather than criticised.

Some contention seems to be made by counsel for appellants that this is an erroneous commingling of commercial waterway and drainage projects. It seems to us that the quotations above made from § 7 (3 Rem. & Bal. Code, § 8172a), of the law plainly show that the powers of the commissioners are such that they may proceed with both objects in view, and that the maximum benefits may be measured with reference to advantages flowing to the benefited property from both or either sources.

Contentions are made in behalf of some of the appellants that the evidence does not warrant the findings of the jury as to maximum benefits. These contentions present very much involved questions of fact, as do most local assessment problems. We have carefully read all of the evidence touching these contentions; and while, if they were here for our consideration as if we had original jurisdiction to determine them, we might arrive at different conclusions, we cannot see our way clear to disturb the findings of the jury upon the question of maximum benefits as to any of the lots or tracts involved. Some of the tracts are situated some one to two miles from the proposed waterway. We may assume, as is claimed, that such tracts derived no benefit from drainage or from relief from flood conditions, their only benefit being the advantages flowing to them from increased commercial advantages and increase in value, because of the construction of the waterway, yet we think the evidence warranted the jury

in concluding that these tracts will receive such benefits. Just how far out from a local improvement the special benefits to neighboring property, flowing from the construction of such an improvement, may extend, cannot be determined by any fixed rule. It would be quite beyond any useful purpose for us to analyze the evidence in detail with a view to demonstrating that these outlying tracts are within the zone of benefits. We may concede, for the purpose of argument, that they are near that border line beyond which benefits do not reach, but we cannot say, in view of the whole record, that the jury erred in concluding that such tracts are within that line. This, probably above all others, presents a situation where the court should be slow to disturb the findings of the jury.

Appellants Branigan and wife, and their lessees, the Lake Gravel Company, have interest in eight acres of land bounded partially by the easterly bank of the Black river and the southerly bank of the Cedar river, at the junction of those rivers. They claim damages because of the change of the flow of the water in these rivers, especially in Cedar river, which flow of Cedar river they claim results in valuable deposits of sand and gravel being continuously made at the mouth of that river in the bed of Black river, and possibly to some extent in Cedar river, though the latter is not clear. The gravel company, as Branigan's lessee, maintains a dredging plant there by which it procures from the bed of Black river, and possibly Cedar river, though the latter is uncertain, quantities of said and gravel which it sells in the market at a profit; and the construction of this waterway, it is claimed, will injure that business by causing such deposits to be discontinued. They claim damages because of this loss, claiming the right to take the sand and gravel from the bed of the river because of their title to the land bordering thereon. The jury found against them, evidently being influenced so to do by the following instruction given by the court:

"You are instructed that, under the contract of purchase under which the defendant Branigan claims, and under the lease which the Lake Gravel Company claims, that the property is described as extending northward to the south bank of Cedar river, thence following the south bank of the Cedar river and the east bank of the Black river, thereby describing the north and west boundary line of the land claimed by these defendants, that under such description the defendants have no claim whatsoever to any part of either the Cedar or Black river beyond the banks of such rivers."

Counsel for appellants contend that the description of their land by which they acquired title thereto gives them the right to take sand and gravel from the beds of these rivers, and that the court's instruction touching their claimed right in that regard is erroneous. It is not contended that the court incorrectly stated the language of the description in the deed and lease under which they claim title. It may be conceded that a description in a conveyance which bounds the land conveyed by a stream, if unnavigable, will be construed as meaning the thread of the stream, but where the description is specific in its language, naming the bank of the stream as the boundary of the land conveyed, we think the decided weight of authority is to the effect that the grantee's rights will not extend beyond such specified boundary so as to give him any right in the bed of the stream. *Lembeck v. Nye*, 47 Ohio St. 336, 24 N. E. 686, 21 Am. St. 828, 8 L. R. A. 578; *Murphy v. Copeland*, 51 Iowa 515, 1 N. W. 691; *Jenkins v. Cooper*, 50 Ala. 419; *People ex rel. Burnham v. Jones*, 112 N. Y. 597, 20 N. E. 577; *People ex rel. Com'rs of Highways v. Board of Sup'rs of Madison County*, 125 Ill. 9, 17 N. E. 147; 1 Gould, Waters (3d ed.), § 199. We understand it to be conceded in the briefs of counsel that Cedar river is unnavigable and that Black river is navigable. As to the latter, it is plain that the title to the bed thereof is not in appellant, but is in the state. Section 1, article 17, state constitution. We conclude that the instruction given was not erroneous.

Counsel for appellants Branigan and wife also make some

contention rested upon their right of navigation in Black
river, which they claim will be lost by this improvement and
by the lowering of Lake Washington through the construc-
tion of the government canal.  We are unable to see anything
in this record indicating that the flow of water in Black
river will be materially changed by the construction of this
waterway, other than that such flow will be rendered more
regular and not subject to flood conditions, since it will
then have the regulating influence of Lake Washington.  In
so far as the prospective lowering of Lake Washington by
the construction of the government canal is concerned, that
is something which the project here involved will not be in
the least responsible for.  If that should destroy Black river
as a navigable stream, such fact would not furnish any re-
lief to these appellants as against these commissioners or the
waterway district they represent.

Some contention is also made by counsel for Branigan and
wife against the finding of the jury upon the question of their
damage involving questions of fact only.  Much is asserted
in the brief of counsel as to what the evidence shows and
what it does not show.  We look in vain in the presentation
of these questions in counsels' brief for citation to the state-
ment of facts where we may find the evidence as they claim.
We do not feel called upon to wade through the several
hundred pages of testimony bearing upon this question in
order to determine whether the jury has found correctly
thereon.

Error is assigned in behalf of appellant Seattle Factory
Sites Company, upon the awarding of compensation and dam-
ages to it for the taking of a tract of its land situated upon
the shore of Lake Washington where the waterway is to join
the lake at its southern extremity.  The assigned error is
rested upon the exclusion by the court of all consideration of
the Factory Sites Company's claim of its loss of preference
right to purchase shore lands which it claims as an incident
to its ownership of the upland taken.  The northerly bound-

ary of the Factory Sites' tract as taken is described in the
petition, the verdict, and the judgment in this proceeding,
as the "United States Meander Line of Lake Washington."
Whether there is at present, or ever was, actually any state
shore land in a legal sense beyond this line, we are not in-
formed.    Indeed, even counsel for appellant seem to be at
sea upon this question.    This uncertainty seems to arise from
the fact, as indicated from the maps offered in evidence, that
this meander line is out some distance in the water, and as to
whether it is at present near the line of navigation or the
line of low water, is a fact as to which no serious attention
seems to have been given at the trial of the case.    At least,
no reference is made in the briefs to the record throwing any
light upon such fact.    Sometime prior to the commencement
of this eminent domain proceeding, the Factory Sites Com-
pany purchased from the state the shore land, whatever there
was of such land, lying in front of its upland, described in the
usual manner, we assume, as being all the shore land in the
front of their upland without defining its inner or outer bound-
ary.    We do not find in the record any copy of the descrip-
tion of such shore land deed.    So that, at the time of this tak-
ing of the land, which is described as bounded by the United
States meander line, the Factory Sites Company was the
owner of both the upland and the shore land.    We are not in-
formed as to whether this description of the land taken by
this eminent domain proceeding includes all or any such
shore land.    At the time of the submission of the question of
the Factory Sites Company's compensation and damages to
the jury for the taking of its land so specifically described,
the trial court entertained some doubts as to the right of
the Factory Sites Company to damages for loss of its claimed
preference right to purchase from the state such shore land
as might be uncovered by the lowering of Lake Washington
through the future construction of the government canal.    The
court, for this reason, submitted to the jury two separate
forms of verdict; one upon the theory that the Factory Sites

Company had the right to compensation for the loss of its
claimed preference to purchase such prospective shore land,
and the other upon the theory that it would not have such
right, but was only entitled to compensation for the land
actually taken, described as being bounded by the United
States meander line.  The jury were clearly instructed, ac-
cordingly, upon both these theories, with the view that the
court in rendering judgment would adopt such verdict as its
further consideration of the subject would lead it to believe
was in accordance with the Factory Sites Company's legal
rights.   The verdict of the jury upon the first theory,
awarded to the Factory Sites Company $3,721, and upon the
second theory $1,860.  Upon further consideration, the court
awarded judgment upon the smaller verdict, being then of
the opinion that the Factory Sites Company's damages were
not measurable by the loss of its claimed right to purchase
the prospective shore lands that might be created by the
lowering of Lake Washington by the construction of the
government canal.   The rendering of the judgment upon
this lesser verdict is the claimed error upon which counsel for
the Factory Sites Company rests its right to have judgment
rendered upon the larger verdict.   It is worthy of special
note here that, while counsel for the Factory Sites Company
have made some claim, both in the trial court and here, that
by virtue of its purchase of the shore land the outer line
thereof would be automatically moved outward by the lower-
ing of the lake, and its ownership be thus extended, the main
contention at all times has been that its loss of right to pur-
chase such prospective shore land is the special element of
damages it was entitled to in addition to compensation for
the land actually taken and specifically described as extend-
ing only to the government meander line.   Our recent decision
in *State v. Sturtevant, ante* p. 158, 135 Pac. 1035, renders
it plain that the contention of counsel for the Factory Sites
Company was for a claimed right which did not in fact exist
in that company, because it already owned the shore land,

the line of which, if moved outward by the construction of the Lake Washington Canal, would automatically carry its ownership out to such line, if it be the owner of the shore land at the time of the moving of such line, securing it access to navigable water which ordinarily is the most important right going with the acquisition of shore land as is pointed out in the *Sturtevant* case. It seems plain to us that the trial court was correct in eliminating from the case this element of damages. Whatever right the Factory Sites Company had in this prospective land, it was not a right to purchase it. It may be well argued that, at the time of the trial of this case, the land not then being uncovered, neither the Factory Sites Company nor any one else, save the sovereign state, had any present right whatever in it, save the right of navigation over the waters then covering it. However, we will not decide this question here. In view of the involved nature of this branch of the case, growing out of the uncertainty as to the present existence of any shore land beyond the specifically described northern line of the tract here condemned, the fact of the future creation of the additional shore land being only contingent, and the fact that the right to any such land beyond the meander line is not here sought to be condemned, we conclude that the judgment upon the smaller verdict awarding compensation to the Factory Sites Company should be affirmed, and that the question as to what right the Factory Sites Company has in land beyond the meander line specifically named as the northerly boundary of the land here taken should be left to future adjustment or litigation. This will protect whatever right the Factory Sites Company has in such land, if it in fact exists, while the waterway commissioners and the waterway district they represent cannot complain, because they have chosen to specifically describe in the petition, verdict, and judgment the land they seek and acquire by this eminent domain proceeding. The right to purchase shore land would be incident to the ownership of the upland taken, but appellants' acquired title

to the shore land bordering on its upland is not an incident to or dependent upon their title to such upland. When such upland is taken by eminent domain proceedings, and therein specifically described, no right to such previously acquired shore land outside of such description is involved; because the title to one does not depend upon the title to the other, as the right to purchase shore land does depend upon the ownership of the upland. We simply hold that, by this condemnation proceeding, the waterway district will acquire the land of the Factory Sites Company which is specifically described in the petition, verdict, and judgment; that there was no right to purchase shore lands incident to the ownership of that land by the Factory Sites Company which could be considered as an element of damage in the taking of that land; and that, whatever right the Factory Sites Company may have in the land to the north of the United States meander line, the northerly boundary of land taken, shall not be considered as rendered *res adjudicata* on this decision. Whether the Factory Sites Company has any interest there we do not now decide. It, in any event, has no right there incident to the land actually taken by this proceeding.

The length of this opinion constitutes but meager evidence of the difficulties of our task in disentangling the numerous issues from their involved condition. We have labored diligently and long to the end that our statement of the issues should be fair and our conclusions correct, and do not feel called upon to discuss the cause further.

The judgment is affirmed.

CROW, C. J., MOUNT, CHADWICK, ELLIS, GOSE, FULLERTON, and MORRIS, JJ., concur.

MAIN, J., took no part.