[No. 12344.   Department Two.   March 1, 1915.]

THE STATE OF WASHINGTON, *on the Relation of A. J. Davis, Plaintiff*, v. THE SUPERIOR COURT FOR COWLITZ COUNTY *et al., Respondents.*[1]

WATERS AND WATER COURSES—BEDS OF STREAMS—OWNERSHIP—NAVIGABILITY. Where a stream is navigable only for the purpose of floating logs and shingle bolts, and not in the general commercial sense, the title to the bed of the stream is in the owner of the adjacent land, as far as the thread of the stream, and not in the state, under Const., art. 17, § 1, asserting the state's title to the beds and shores of all "navigable" streams.

SAME—RIPARIAN OWNERS—RIGHT TO ACCUSTOMED FLOW. Where a boundary extends over the bank and into the river, the owner is a riparian owner, and entitled to damages for deprivation of the right to the natural flow of the stream in its accustomed channels without diminution or alteration, subject to the same right as other riparian owners.

SAME — BEDS OF STREAMS — OWNERSHIP — BOUNDARIES — RIVERS. Where land was purchased according to a plat describing the tract as running "to the Coweman slough, thence with the meanders of said slough" by courses and distances, "thence leaving the slough . . . to the point of beginning," the purchaser acquires title to the bed of such slough, under the rule that, where the description in a plat makes a nonnavigable stream a boundary, the boundary line is the thread of the stream and not the bank, unless a contrary intention appears from the language used in the description, and by the further rule that courses and distances must yield to natural and ascertained objects, such as a river or slough; and the "meanders" of the slough must mean a line following the sinuosities of the river.

EMINENT DOMAIN—COMPENSATION—WAIVER—RIPARIAN RIGHTS. In condemnation proceedings, the right of a riparian proprietor to as-

[1]Reported in 146 Pac. 609.

sert title to the thread of a nonnavigable stream and claim compensation therefor, is not waived by his attempt to show that he was a riparian proprietor upon a different theory and failed in his proof.

Certiorari to review a judgment of the superior court for Cowlitz county, Darch, J., entered September 9, 1914, in favor of the defendants, notwithstanding the verdict of a jury rendered in favor of the plaintiff for damages to property from improvements within a diking district. Reversed.

*Hayden, Langhorne & Metzger*, for relator.

*Magill, McKenney & Brush*, for respondents.

MAIN, J.—This proceeding was instituted by the petition of Diking District No. 2 of Cowlitz county, Washington, acting through its board of diking commissioners under Rem. & Bal. Code, § 4091 *et seq.* (P. C. 151 § 1). The purpose of the proceeding was to determine the damages for lands and property rights taken, and to assess the benefits which would result from the proposed improvement. The improvement was for the purpose of reclaiming, or preventing the overflow of, lands within the diking district which would be caused by the recurring high waters of the Columbia, Cowlitz, and Coweman rivers. For the purpose of carrying out this improvement, it was necessary that dikes be constructed and that dams be erected upon or across the Coweman river.

The relator here, A. J. Davis, owned a shingle mill upon or near the west bank of the north fork of the Coweman river, or the Coweman slough, as it was referred to by some of the witnesses. This north fork of the river or slough was navigable for the purpose of floating logs and shingle bolts, and was used by Davis for that purpose. The erection of the dams proposed would cause the water to cease to flow through this fork of the river. Davis was the owner of Block "B" in Wallace's addition to the town of Kelso; and it was upon this block that the shingle mill stood. According

to the plat of Wallace's addition, the boundaries of that addition were specified as follows:

"Wallace addition to Kelso begins on the east boundary of the Northern Pacific Railway 228.2 feet east of the north-west corner of the V. M. Wallace D. L. C. in section 34, township 8, north, of range 2, west of the Willamette Meridian; running thence east on the north boundary of said claim 1948.3 feet to the Coweman slough; thence with the meanders of said slough (various courses and distances), thence leaving the slough (various courses and distances) to the point of beginning."

Upon the trial, Davis claimed that the east boundary line of block "B" was the center of the Coweman slough. The district claimed that this boundary was a few feet back from the bank of the slough and was a line staked out by the surveyor at the time of platting Wallace's addition. During the trial, Davis offered evidence in an attempt to show that the line staked out by the surveyor would meet the water's edge at the time when the slough was running bank full. The jury returned a verdict assessing Davis' damages at the sum of $5,000. Thereafter motions for judgment notwithstanding the verdict and for a new trial were interposed by the diking district. The motion for judgment notwithstanding the verdict was granted. Davis brings the case here by certiorari.

There are two questions of primary importance in this case: First, Was the east line of Wallace's addition to the town of Kelso the thread of the Coweman slough or the line run upon the bank thereof by the surveyors? And second, If the legal effect of the description in the plat is to fix the boundary at the center of the slough, did Davis waive his right to claim thereunder by the fact that he offered testimony attempting to show that he was a riparian proprietor upon a different theory, and failed in his proof?

I.   As already stated, the Coweman slough was navigable for the purpose of floating logs and shingle bolts, but not in the general commercial sense. Where a river is navigable

in a special sense, as here, but not in a general sense, the title to the bed of the stream is in the owner of the adjacent land, and not in the state, under § 1, art. 17 of the constitution. In *Watkins v. Dorris*, 24 Wash. 636, 64 Pac. 840, 54 L. R. A. 199, speaking of a stream similar in character to that here under consideration, it was said:

"The stream must therefore be held to be a public highway for the purpose of floating logs and timber to market. Being a public highway for such purpose, what are the relations of the land owner to the stream? Thomas Dorris is the owner of the land on both sides of the stream. If such a stream as this is included in the provisions of § 1, art. 17, of the constitution of Washington, then the state is the owner of the bed of the stream below ordinary high water mark. We do not believe, however, that the said constitutional provision was intended to include streams of the character of this one, but only such as are navigable for general commercial purposes. This stream is of such a character that its use as a public highway is restricted to one purpose, viz., that of floating logs or timber; and we think a distinction must be drawn between such streams and those which are highways for general trade and commerce. The title to the bed of the stream, therefore, passed from the government to the land owner, but it is subject to the right of the public to use the stream for floating logs and timber."

If the eastern boundary of Wallace's addition was the center of the stream, it is not questioned but that Davis took to that boundary when block "B" was conveyed to him. If block "B" does extend over the bank and into the river, then Davis was a riparian owner, and as such had a right to the natural flow of the waters of Coweman slough in their natural and accustomed channels without diminution or alteration, subject only to the same right and use in every other riparian proprietor. A deprivation of such right would entitle him to damages. Upon this question, in *Kalama Elec. L. & P. Co. v. Kalama Driving Co.*, 48 Wash. 612, 94 Pac. 469, 125 Am. St. 948, 22 L. R. A. (N. S.) 641, it was said:

"The respondent, being a riparian owner upon the Kalama river, has, as such, valuable property rights which cannot be taken or damaged for the public use without compensation. One of these is its right to a continuance of the natural and ordinary flow of the water over, across, and past its lands. Gould, Waters (3d ed.), § 204. This riparian right, guaranteed by the common law, has been repeatedly recognized and protected by this court."

As to the effect of the description in the plat, the general rule appears to be, that where the description in a plat, deed, or field notes makes a nonnavigable stream a boundary, that the boundary line is the thread of the stream and not the bank, unless a contrary intention appears from the language used in the description. Where the calls in a deed or plat are to a river, naming it, "thence along the river" to a certain point, "thence leaving the river," the boundary line is the center of the stream. *Hanlon v. Hobson*, 24 Colo. 284, 51 Pac. 433, 42 L. R. A. 502; 2 Devlin, Real Estate and Deeds (3d ed.), p. 1965; Martindale, Conveyancing (2d ed.), § 104; 3 Washburn, Real Property (5th ed.), p. 436.

In *Wardell v. Commercial Waterway District No. 1*, 80 Wash. 495, 141 Pac. 1045, it was held, that a call in a deed "to the Duwamish river," meant to the center of the stream if the grantor owned title that far. The description involved in this case contains calls "to the Coweman slough," "thence with the meanders of said slough," "thence leaving the slough." If "to the Duwamish river," means to the center of the river if the grantor owns thus far, as was said in the *Wardell* case, a call "to the Coweman slough" could not well have a different meaning. After the call "to the Coweman slough," the next call is, "thence with the meanders of said slough." The latter call no doubt means a line which follows the sinuosities of the river, and the river becomes the boundary. *Schurmeier v. St. Paul etc. Co.*, 10 Minn. 82, 88 Am. Dec. 59; *Turner v. Parker*, 14 Ore. 340, 12 Pac. 495. In the case last cited, the court was considering the effect of a

description which had in it, "thence with the meander of the river." It was there said:

"Meander means to follow a winding or flexuous course; and when it is said: 'thence with the meander of the river,' &c., it must mean a meandered line—a line which follows the sinuosities of the river—or in other words, that the river is the boundary of the land claim between the points indicated."

The description as contained in the dedication of Wallace's addition to the town of Kelso, following courses and distances, would not extend the east boundary to the center of the slough. But the rule is that course and distance must yield to natural and ascertained objects. A call for a natural object, such as a river, will control as against course and distance. In *County of St. Clair v. Lovingston,* 23 Wall. 46, 62, it is said:

"It is a universal rule that course and distance yield to natural and ascertained objects. A call for a natural object as a river, a spring, or even a marked line, will control both course and distance."

It follows, therefore, that in the present case the Coweman slough was the boundary, and that this would prevail as against courses and distances mentioned in the description. The stakes set by the surveyor of the plat of Wallace's addition to the town of Kelso are not mentioned in the description upon the plat. Where the stakes were set must depend upon oral testimony. If the legal effect of a description in a deed or plat could be overcome by oral testimony as to where the stakes were set by the surveyor, and what the intention of a platter was, it would many times make the title to valuable real property very insecure. Davis, in purchasing block "B," had a right to rely upon the legal effect of the description.

It is argued, however, that the case of *Newell v. Loeb,* 77 Wash. 182, 137 Pac. 811, is controlling here as establishing that the boundary does not go to the thread of the stream. That case is distinguishable from the present in two respects:

9—84 WASH.

First, there, owing to the navigable character of the stream, the title to the bed thereof was in the state. Here, the title to the Coweman slough, it being navigable only in a special sense, was in the owner of the lands bordering thereon. And second, in that case the description in the plats involved was "to the right bank" of the Duwamish river, and "thence upstream with the meanders of said right bank;" and in the supplemental plat it was stated, that the boundaries began at a certain point and extended a certain distance in a given direction to the meanders of the river. Considering the description in the original plat, and also in the supplemental plat, it was held that the boundary line extended only to the right bank of the Duwamish river, and that the description in the supplemental plat extended to the meanders of the river, and along the meanders thereof. The description here involved was to the Coweman slough, thence with the meanders of said slough, thence leaving the slough. Where the calls in a description are to the bank of a named river, thence following the named bank thereof, the boundary line does not extend beyond the bank of the river. The difference in legal effect between a description which contains calls to a *natural boundary*, such as a *river*, and a description which contains calls to the *bank* of the river, thence along such *bank*, is recognized in *Commissioners Commercial Waterway District No. 2 v. Seattle Factory Sites Co.*, 76 Wash. 181, 135 Pac. 1042, where it is said:

"It may be conceded that a description in a conveyance which bounds the land conveyed by a stream, if unnavigable, will be construed as meaning the thread of the stream, but where the description is specific in its language, naming the bank of the stream as the boundary of the land conveyed, we think the decided weight of authority is to the effect that the grantee's rights will not extend beyond such specified boundary so as to give him any right in the bed of the stream."

II. It appearing from what has been said that, under the description in the plat, the boundary line would be the

center of the Coweman slough, the question then arises
whether Davis can claim as a riparian proprietor, in view of
the fact that upon the trial he did not rely solely upon his
legal rights under the description, but sought to supplement
this by testimony which he claimed would show that he was
a riparian proprietor, even considering the line staked upon
the bank by the surveyors, and failed in this attempt.   Ac-
cording to the description set out in the plat, the legal
effect thereof was to fix the boundary at the thread of the
river.   The eastern boundary of block "B," which Davis
owned, would coincide with the boundary of the plat.   Under
this description, he owned title to the thread of the stream.
Owning title thus far, we think the fact that he attempted
to establish an additional right, and failed, would not deprive
him of the right to assert title which he acquired by virtue
of the legal effect of the description in the plat.   It follows
that the trial court erred in entering judgment notwithstand-
ing the verdict, and for this error the judgment will be
reversed and the cause remanded.

Reversed.

CROW, MOUNT, ELLIS, and FULLERTON, JJ., concur.