[No. 10415.   Department Two.   November 19, 1912.]

PETER WILSON *et al., Respondents,* v. OREGON-WASHINGTON
RAILROAD & NAVIGATION COMPANY, *Appellant.*[1]

NAVIGABLE WATERS—HARBOR LINES AND AREAS—LOCATION OF PIERS
—DAMAGES TO ABUTTERS—RIGHTS OF LESSEES.  Since the state owns
the beds and shores of navigable waters, under Const., art. 16, § 1,
and is prohibited from giving any rights to private persons in waters
beyond harbor lines established pursuant to art. 15, § 1, the state
may establish pier head lines beyond the harbor lines, whenever it
pleases; and hence a lessee of the state of abutting tide lands cannot
show the establishment or change of pier head lines at locations
advantageous to his leasehold for the purpose of enhancing the
value thereof, in an action to recover for damages thereto.

NAVIGABLE WATERS—ERECTION OF STRUCTURES—AUTHORITY.  Private
individuals may, by consent of the Federal and state governments,
erect structures in the navigable waters of the state.

NAVIGABLE WATERS—OBSTRUCTIONS—DAMAGE TO ABUTTER BY EREC-
TION OF BRIDGE—HARBOR AREA—USE.  Where a pier for a railroad
bridge across navigable water was placed on harbor area which the
railroad company had leased from the state, any damage it might
do to an adjoining owner by causing the water to shoal in front of
such owner is *damnum absque injuria;* since it was caused by the
lawful use of the railroad company's property.

NAVIGABLE WATERS—OBSTRUCTION—INJURY TO ABUTTERS—DAMAGES
—EVIDENCE—REMOTENESS.  Opinion evidence that a pier for a rail-
road bridge would cause the water to shoal in front of adjoining
property is too remote and speculative to show damages to such
property; although if such damages actually occur in the future,
compensation therefor may be recovered.

NAVIGABLE WATERS—OBSTRUCTION BY BRIDGE—DAMAGE TO ABUT-
TERS—MEASURE OF DAMAGES.  In an action by the lessee of tide lands,
for damages by reason of the erecting of a railroad bridge across
navigable water, the plaintiff may recover all damages caused to
his property is so far as it differs in kind from the damages to
other property generally; as in rendering the property less con-
venient of access by reason of its close proximity, but not for damage
by the necessity of passing through a draw, inflicted on all prop-
erty alike; hence the difference in value before and after the erec-
tion of the bridge is not the true measure of damages.

[1]Reported in 127 Pac. 847.

SAME — ACTION FOR DAMAGES — TRIAL — INSTRUCTIONS—EVIDENCE. In an action by a lessee of tide lands for damages to his property by the construction of a railroad bridge across navigable water, error in the admission of evidence to show the value of the land before and after the erection of the bridge is not cured by an instruction that damages could not be recovered for an interference with the navigation of the river, where the testimony failed to show what portion of the decreased value was due to the manner in which the bridge was constructed, and what portion to hindrance in navigation.

Appeal from a judgment of the superior court for Chehalis county, Sheeks, J., entered January 22, 1912, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for damages to land by the construction of a railroad bridge. Reversed.

*Bridges & Bruener (Bogle, Graves, Merritt & Bogle,* of counsel), for appellant, contended, *inter alia,* that no private individual has any rights whatsoever beyond the outer harbor line. *Portland v. Montgomery,* 38 Ore. 215, 62 Pac. 755; *Illinois Central R. Co. v. Illinois,* 146 U. S. 387; *Attorney General v. Boston & L. R. Co.,* 118 Mass. 345; *People v. New York & S. I. Ferry Co.,* 68 N. Y. 71; *Miller v. Mendenhall,* 43 Minn. 95, 44 N. W. 1141, 19 Am. St. 219, 8 L. R. A. 89. The plaintiffs' private rights are confined to the waters in front of their wharf. *Chicago Yacht Club v. Marks,* 97 Ill. App. 406; *Yates v. Milwaukee,* 10 Wall. 497; *Rumsey v. New York & N. E. R. Co.,* 133 N. Y. 79, 30 N. E. 654, 28 Am. St. 600, 15 L. R. A. 618; *Union Depot St. R. & Tr. Co. v. Brunswick,* 31 Minn. 297, 17 N. W. 626, 47 Am. Rep. 789; *Bailey v. Philadelphia etc. R. Co.,* 4 Har. (Del.) 389, 44 Am. Dec. 593; *Austin v. Rutland R. Co.,* 45 Vt. 215.

*J. C. Cross (A. Emerson Cross,* of counsel), for respondents, contended, among other things, that the waters in question are within the control of the commerce clause of the Federal constitution. *Rhea v. Newport N. & M. V. R. Co.,* 50 Fed. 21; *The Daniel Ball,* 10 Wall. 557; *Escanaba Co. v. Chicago,* 107 U. S. 678; *Miller v. Mayor of New York,* 109

U. S. 385. The right given to respondents by the secretary of war is a property right vested in respondents, and the action of appellant in preventing the building of respondents' dock is a taking of their property without due process of law. *South Carolina v. Georgia*, 93 U. S. 4; *Wisconsin v. Duluth*, 96 U. S. 379; *United States v. Milwaukee & St. Paul R. Co.*, 5 Bissell (U. S.) 410; *Willamette Iron Bridge Co. v. Hatch*, 125 U. S. 1; *United States v. Bellingham Bay Boom Co.*, 176 U. S. 211. The government has no more property in the water than a riparian owner or the public. *Smith v. Rochester*, 92 N. Y. 463, 44 Am. Dec. 393; *Brown v. Cunningham*, 82 Iowa 512, 48 N. W. 1042, 12 L. R. A. 583. The legislature cannot authorize the construction of a railroad between high and lower water mark or anywhere below the line of private ownership, without compensation to the riparian owner. Lewis, Eminent Domain (2d ed.), ch. 5, § 84. *Railroad Co. v. Remnick*, 102 U. S. 180; *Carli v. Stillwater St. R. & Tr. Co.*, 28 Minn. 373, 10 N. W. 205, 41 Am. Rep. 290; *Union Depot St. R. & Tr. Co. v. Brunswick*, 31 Minn. 297, 17 N. W. 626, 47 Am. Rep. 789; *Delaplaine v. Chicago & N. W. R. Co.*, 42 Wis. 214, 24 Am. Rep. 386; *Diedrich v. Northwestern Union R. Co.*, 42 Wis. 248, 24 Am. Rep. 399; *Railway Co. v. Renwick*, 102 U. S. 180; *Drury v. Midland R. Co.*, 127 Mass. 571. One riparian owner cannot project his wharf beyond the outer harbor line in such a way as to injure the adjoining riparian owner. *Proprietors of Maine Wharf v. Proprietors of Custom House Wharf*, 85 Me. 175, 27 Atl. 93; *Laughlin v. President etc. of Lamasco City*, 6 Ind. 223; *Delaware River Steamboat Co. v. Burlington & B. Steam Ferry Co.*, 81 Pa. St. 103. Respondents' special injury was a material element for the consideration of the jury in assessing their damages. *Clark v. Peckham*, 10 R. I. 35, 14 Am. Rep. 654; *Harrison v. Sterett*, 4 Harr. & McH. (Md.) 540; *Harlan & Hollingsworth Co. v. Paschall*, 5 Del. Ch. 435; *Brayton v. City of Fall River*, 113 Mass. 218, 18 Am. Rep. 470.

FULLERTON, J.—The appellant, a railroad company, constructed a railroad between the city of Centralia, in the state of Washington, and the city of Aberdeen therein. In doing so, it was found necessary to erect a bridge across the Chehalis river, at a point on the same where the tides ebb and flow. Before the bridge was erected, plans and specifications thereof were submitted to and approved by the proper officers of the United States and the state of Washington, and the erection of the bridge authorized.

Inside of the harbor lines, the bridge was erected wholly upon lands belonging to the railroad company. Lying immediately to the north of the railroad company's lands, on the west side of the river, were lands belonging to the respondents. These consisted of a freehold interest in lots 1 and 2 of block 52, as known and designated upon the original plat of the city of Aberdeen, and lot 5, in tract 17, of the Aberdeen Tide and Shore Lands, as platted by the state of Washington; and a leasehold interest granted by the state, having some fifteen years to run, in the harbor area lying in front of lot 5, a tract of land some 68 feet in width and 103 feet in length. The railroad company's bridge did not cross the Chehalis river at right angles to the stream, but crossed the same somewhat diagonally; the easterly end of the bridge —the end across the stream from the respondents' property —being farther up the stream than the westerly end. The effect of this diagonal course caused the northerly side of the bridge to make an angle with the southern line of the respondents' property of some 21° 26', or an angle of 88° 84' with the line marking the harbor area. The northerly side of the bridge was constructed within six inches of the southeast corner of the leased harbor area, and the bridge as it crossed the stream passed in front of this area. The bridge was erected on concrete piers, with a draw in the center of the stream. One of these piers was erected inside the harbor area, but close to the water side thereof, and another some 161 feet therefrom out into the stream.

This action was brought by the respondents to recover the sum of $25,000, alleged to have been suffered by them in damages to their property caused by the erection of the bridge. In their complaint they alleged that their property was valuable chiefly for wharfage purposes, and that the bridge of the appellant was erected upon and in front of the property in such a manner as to practically destroy it for such purposes; that the piers which were erected to support the bridge would cause the water to shoal in front of the property, which shoaling would further interfere with the use of the property, and would eventually cause the river in front of the property to so far fill up as to render the same unnavigable. Issue was taken on the allegations of the complaint and a trial had thereon before a jury, which resulted in a verdict and judgment in favor of the respondents for the sum of $5,500. This appeal followed.

The errors first assigned relate to the admission of evidence. The respondents, over the objection of the appellant, were permitted to show that, subsequent to the time of the establishment by the state of the harbor lines in front of their property and their lease of the harbor area included therein, the government engineers made a change in the government pier head line in front thereof by moving the same further out into the stream; that, whereas, such pier head line had been established originally so as to practically coincide with the state's outer harbor line, the change placed it some twenty-six feet further out therefrom. They were permitted to show, also, that certain persons holding property situated further up the river than the respondents' property had erected wharves extending into the stream out to this changed pier head line. The evidence was admitted on the theory, as the court explained, that the change in the pier head line tended to enhance the value of the respondents' property. This evidence we think should not have been admitted. Were it necessary for a better understanding of the surrounding situation to show that the government pier head line had

been moved from the immediate front of the leased property
to a distance of 26 feet therefrom further out into the stream,
no objection could be urged against the showing, and no
harm could accrue therefrom, but it was prejudicial error
to allow the fact to be shown as enhancing the value of the
respondents' property. In virtue of the state constitution,
the state owns the beds and shores of all the navigable waters
of the state (Const., art. 16, § 1) ; and is by the same in-
strument required to establish harbor lines in such navigable
waters wherever such waters lie within or in front of the
corporate limits of any city; and is prohibited from giving,
selling, or leasing to any private person, corporation, or as-
sociation any rights whatever in the waters beyond such
harbor lines. Const., art. 15, § 1. The legislature has enacted
statutes carrying into effect these provisions of the consti-
tution, and the harbor lines and harbor area, leased by the
respondents and in question here, were established and leased
pursuant to these provisions of the constitution and laws. It
follows that the establishment of government pier head lines
out from and beyond the harbor lines established by the state
can confer no rights on individuals who have leased harbor
areas from the state. Since the state owns the beds and
shores of the waters in which such pier head lines are estab-
lished, it may do therewith as it pleases; and if it chooses
to establish its harbor lines a less distance into the waters
than the pier head lines extend, it has a perfect right to do
so. And having such right, its lease of the more limited area
confers no right on the lessee to the greater area, and it was
error in this instance for the court to assume that the change
in the government pier head lines enhanced the value of the
respondents' holdings.

It is not necessary to discuss the question whether the
United States may, against the will of the state, give au-
thority to a private individual to erect structures in the navi-
gable waters of the state, as the United States has never
manifested its purpose so to do. The effect of the congres-

sional acts upon that subject, as interpreted by the supreme court of the United States, is to make the erection of structures in the navigable waters of a state depend upon the concurrent or joint assent of both the national and state governments.

"The secretary of war, acting under the authority conferred by congress, may assent to the erection by private parties of such a structure. Without such assent the structures cannot be erected by them. But under existing legislation they must, before proceeding under such an authority, obtain also the assent of the state acting by its constituted agencies." *Cummings v. Chicago,* 188 U. S. 410.

The court permitted certain witnesses to give it as their opinion that the piers supporting the bridge located nearest the respondents' property would cause a shoaling of the waters on their up river sides, and that this shoaling would interfere with the water approach to the wharves erected on such property. The appellant objected to the introduction of the evidence when the same was offered, and urges in this court that its admission was error. We think the contention is well founded. The pier nearest to the respondents' property was erected on the harbor area which the appellant had leased from the state. It is a lawful structure, and there is no pretense that it was carelessly or negligently constructed. Such being the facts, such incidental damage as it might do to the respondents' property in the way of causing the waters to shoal is *damnum absque injuria,* and cannot be recovered for by the respondents. Indeed, it is contemplated by the constitution and statutes creating this area that it shall be used in the aid of commerce and navigation. The lessee thereof is permitted to place upon such land, even to the full extent of its area, docks, wharves and other structures. These may be constructed of such material as the owner decides most fit, even to the extent of shutting off entirely the flow of water thereon. This must be the rule, else no lessee of the harbor area could improve his property without paying damage to the adjoining lessees.

Again we think this evidence too remote and speculative to furnish a just measure of damage in the present case. How unreliable and prone to mistake this character of testimony generally is, was shown in the present case. At the time of the trial, the bridge had been constructed and in operation for a considerable period of time. The appellant's engineers had taken soundings around all of the piers at stated intervals, and had found that the waters, so far from shoaling around the piers mentioned by the respondents' witnesses, had actually deepened around them—so much so that it was believed necessary for their protection to place a concrete base or floor for a considerable space about them in order to prevent further washing. Compensation for actual loss sustained is the fundamental principle upon which the law bases an allowance of damages. This rule precludes the consideration of consequences which are contingent, speculative or merely possible. The probability that future injurious consequences will arise from a given injury must be shown with reasonable certainty before they can be made the basis for estimating damages. Such reasonable certainty does not appear from the character of testimony in consideration here.

The foregoing considerations require the exclusion of the evidence objected to as to each of the piers. It is well, however, to say that the rule announced will not preclude the respondents from subsequently maintaining an action for damages if actionable injury be done to their property in the future by the shoaling of the waters around the outer pier. The railroad company, by the construction of the bridge, assumed the responsibility of compensating the owners for all real property taken or damaged thereby. If this was not done in the original condemnation suit, action can be maintained for such injuries as they accrue whether immediately or in the future.

For the purpose of showing in what manner the property was damaged by the construction of the bridge, and the

amount of such damages, the court permitted witnesses to testify, over the objection of the appellant, that boats plying on the river could not approach the property except from the upper river side, and then only with considerable danger, and when the tide was flowing; it also allowed certain others to give their opinions as experts as to the different values of the property immediately before and immediately after the construction of the bridge; all of which is urged as error in this court. As to the evidence relating to the manner in which the bridge damaged the property, we think it clearly admissible. The respondents were entitled to recover for all damages caused their property by the construction and maintenance of the bridge in so far as such damages differed in kind from that caused property generally along the river; for example, in so far as the bridge rendered the property less convenient of access by requiring boats desiring to visit the property from the lower river to pass through the draw in the bridge before reaching the property, no damage could be recovered for such inconvenience as this was a damage inflicted upon all property lying above the bridge. But in so far as the bridge, by its close proximity to the property, or because of the angle which it made with reference to the river line of the property rendered it difficult of access, it was a damage not suffered by all property alike, and hence is recoverable under the rule stated.

We think, however, that it was not a correct measure of the damages to the property to take the difference in its value immediately before and immediately after the construction of the bridge. This method of admeasurement necessarily included damages which were not recoverable, as it included the general damage suffered alike by all property on the stream caused by the injury to navigation which the erection of the bridge entailed. It may be true that damages from this cause increases as the bridge is approached, but it is nevertheless a nonrecoverable item, since the dif-

ference is one of degree and not of kind.   The evidence of the difference in value, therefore, since it failed to take into account this nonrecoverable item, should have been excluded on the appellant's objection.

But it is said that the court in its instructions to the jury cured any error that might be predicated upon this omission in the evidence.   The court did, it is true, instruct the jury to the effect that, for any interference with the navigation of the river caused by the bridge, no damages were recoverable.   But it is plain that this could not cure the error here complained of, as such error was fundamentally inherent in the evidence itself, and could not be reached by instruction.   Stated in another way, the evidence furnished no means by which the jury could ascertain what portion of the decrease in value of the property caused by the bridge was due to the hindrance to navigation, or what portion of such damages was due to the manner in which the bridge was erected, and as the omission could be supplied by evidence only, it was not curable by instructions to the jury. The remaining assignments require no separate consideration.   The judgment is reversed, and a new trial awarded.

MOUNT, C. J., ELLIS, and MORRIS, JJ., concur.