[No. 11098. Department Two. December 31, 1913.]

FRED W. NEWELL *et al., Respondents,* v. SAMUEL S. LOEB *et al., Appellants,* PHILLIP ABEY *et al., Defendants.*[1]

EMINENT DOMAIN — WATERWAYS — PROCEEDINGS — JURY TRIAL— CHALLENGES. In a special proceeding to establish a waterway district, all the defendants must join in peremptory challenges to jurors, since the special law does not provide for peremptory challenges, and the general statutes require all defendants to join.

SAME—COMPENSATION—NAVIGABLE WATERS—DIVERSION—RIGHTS OF RIPARIAN OWNERS. The state being the owner of the beds of navigable rivers, under the constitutional assertion of art. 17, § 1, riparian owners are not, in eminent domain proceedings to establish a waterway district, entitled to damages from the fact that the state will divert the course of the stream and leave their property without access to the water.

SAME— BENEFITS — ASSESSMENT — DETERMINATION — PROCEEDINGS. 3 Rem. & Bal. Code, § 8177-2, requiring the jury to find the maximum amount of benefits .from the establishment of a waterway district, merely fixes a basis for and limitations upon the assessment to be

[1]Reported in 137 Pac. 811.

made later, and hence is not objectionable in that the amount of benefits found greatly exceed the cost of the improvement.

EVIDENCE—EXPERTS—OPINIONS—VALUE. Where expert witnesses on land values qualified on direct examination, their testimony was competent, lack of qualifications disclosed on cross-examination going only to the weight of the evidence.

EMINENT DOMAIN—PROCEEDINGS—INSTRUCTIONS—EFFECT OF VIEW. In eminent domain proceedings, an instruction to the jury on the subject of their view of the premises, properly stating the effect thereof in weighing and applying the evidence, is not erroneous in that the jury were told that "what they see they know."

SAME—PROCEEDINGS—APPEAL—REVIEW—VERDICT. In eminent domain proceedings to establish a waterway district, the jury's verdict as to the amount of benefits will not be disturbed where supported by evidence, although the same was strongly contradicted.

EMINENT DOMAIN—PROPERTY SUBJECT—PROPERTY DEVOTED TO PUBLIC USE. The property of a public service corporation, already devoted to a public use, may be acquired by condemnation in the establishment of a waterway district, under 3 Rem. & Bal. Code, § 8172a, subd. "a" providing that private property and the property of private corporations may be condemned when necessary to make the improvements, and Id., subd. "d," providing for the condemnation of all necessary and needed rights of way in the straightening or improving of the river.

BOUNDARIES—NAVIGABLE STREAMS. A deed according to recorded plats conveys the land only to the bank of the river, where the boundaries in the plat ran "to the right bank" of the river, and "thence up stream with the meanders" etc.

NAVIGABLE WATERS—RIPARIAN RIGHTS—DIVERSION OF WATERS BY STATE—EMINENT DOMAIN—COMPENSATION. Riparian owners have no rights in the bed of a navigable stream, beyond their boundaries, and no rights in the waters of the river as against the state or its agency; hence a riparian owner is not entitled to recover damages from the establishment of a waterway district by reason of the diversion of the water and being compelled to procure a supply of water elsewhere.

EMINENT DOMAIN — WATERWAY DISTRICTS — PROCEEDINGS — JURY TRIAL—BENEFITS—DETERMINATION. Upon the assessment of benefits by a jury in a condemnation proceeding to establish a waterway district, in which there are thousands of party defendants, it is not error to permit the estimates of the witnesses to be taken by the jury to the jury room, under instructions that they were but aids to their recollection of the testimony and not to be considered as evidence.

SAME—PROCEEDINGS—ASSESSMENTS—BENEFITS.—SEPARATE TRIALS. 3 Rem. & Bal. Code, § 8166a *et seq.*, providing for the establishment of waterway districts, does not authorize separate trials upon the question of the maximum benefits to the property in the district.

SAME—ASSESSMENT OF BENEFITS—RAILROAD PROPERTY. The fact that a railroad right of way is at present being used exclusively for railroad purposes is no objection to its assessment for benefits from the establishment of a waterway district.

SAME—ASSESSMENT OF BENEFITS—DETERMINATION. Under 3 Rem. & Bal. Code, § 8177-2, requiring the jury in condemnation proceedings to establish a waterway district, to find the maximum amount of benefits per acre or per lot, the jury must determine the maximum benefits to platted and unplatted property at the time of the trial; hence cannot make deductions for streets that might be platted in the future.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered December 14, 1912, upon verdicts of a jury awarding damages and assessing benefits in condemnation proceedings to establish a waterway district. Affirmed.

*Richard Saxe Jones*, for appellants Loeb and Moyses, contended, *inter alia*, that appellants were deprived of their right to a jury trial in being deprived of their peremptory challenges. *Mutual Life Ins. Co. v. Hillmon*, 145 U. S. 285; *Times Pub. Co. v. Carlisle Journal Co.*, 94 Fed. 762; *Betts v. United States*, 132 Fed. 228; *Proprietors of Mills etc. v. Inhabitants of Randolph etc.*, 157 Mass. 345, 32 N. E. 153. The power and authority of the Federal government over navigable waters is expressly limited to a sovereign power of regulation for the purpose of navigation. 2 Blackstone, Commentaries (4th ed.), p. 18; *Sweet v. Syracuse*, 129 N. Y. 316, 27 N. E. 1081, 29 N. E. 289; *United States v. Chandler-Dunbar Water Power Co.*, 209 U. S. 447; *St. Anthony Falls Water Power Co. v. St. Paul Water Commissioners*, 168 U. S. 349. All title and power of control by the State of Washington over the beds and waters of a navigable stream comes from a transfer of that power from the United States government and is not in any degree greater than the

rights of the United States government, itself, and is there-
fore simply a sovereign power of regulation for the purposes
of navigation; and the proprietary rights of riparian owners
are *jure natura,* subject, however, to the sovereign control.
*Union Depot etc. Co. v. Brunswick,* 31 Minn. 297, 17 N. W.
626, 47 Am. Rep. 789; *Hobart v. Hall,* 174 Fed. 433; *Smith
v. Rochester,* 92 N. Y. 463, 44 Am. Rep. 393; *Rumsey v.
New York & N. E. R. Co.,* 133 N. Y. 79, 30 N. E. 654, 28
Am. St. 600, 15 L. R. A. 618.

*James B. Howe* and *Hugh A. Tait,* for appellants Puget
Sound Traction, Light & Power Company *et al.,* contended,
among other things, that the traction company's property
and property rights are already devoted to a public use,
and cannot therefore be condemned or taken for another
such use.    15 Cyc. 567; Lewis, Eminent Domain (3d ed.),
§ 440; *Seattle & M. R. Co. v. State,* 7 Wash. 150, 34 Pac.
551, 38 Am. St. 866, 22 L. R. A. 217; *Samish River Boom
Co. v. Union Boom Co.,* 32 Wash. 586, 73 Pac. 670; *State
ex rel. Skamania Boom Co. v. Superior Court,* 47 Wash. 166,
91 Pac. 637; *Tacoma v. Nisqually Power Co.,* 57 Wash. 420,
107 Pac. 199; *Roberts v. Seattle,* 63 Wash. 573, 116 Pac. 25;
*Seattle v. Fidelity Trust Co.,* 22 Wash. 154, 60 Pac. 133;
*State ex rel. Postal Tel. Cable Co. v. Superior Court,* 64
Wash. 189, 116 Pac. 855; *State ex rel. Wauconda Inv. Co.
v. Superior Court,* 68 Wash. 660, 124 Pac. 127, Ann. Cas.
1913 E. 1076.    Title to property on a navigable body of
water extends to the meander line, if the meander line is be-
low the line of ordinary high water.    *Scurry v. Jones,* 4
Wash. 468, 30 Pac. 726; *Cogswell v. Forrest,* 14 Wash. 1,
43 Pac. 1098; *Washougal & LaCamas Transp. Co. v. Dalles,
Portland & A. Nav. Co.,* 27 Wash. 490, 68 Pac. 74; *Jones v.
Callvert,* 32 Wash. 610, 73 Pac. 701; *Kneeland v. Korter,*
40 Wash. 359, 82 Pac. 608, 1 L. R. A. (N. S.) 745.    The
title of the traction company to its property extends below
the line of ordinary high water and into the bed of the river,

and it has the right to have the water flow in its customary volume and manner over that part of the bed of the river which it owns, and it cannot be lawfully deprived of such right without first being compensated for the damage suffered thereby. *Rigney v. Tacoma Light & Water Co.*, 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425; *New Whatcom v. Fairhaven Land Co.*, 24 Wash. 493, 64 Pac. 735, 54 L. R. A. 190; *Madson v. Spokane Valley Land etc. Co.*, 40 Wash. 414, 82 Pac. 718, 6 L. R. A. (N. S.) 5.

*Ira Bronson (Gay & Kelleran, of counsel)*, for appellants Macaulay *et al.*, contended, among other things, that the unconstitutionality of the law lies in the fact that there is a judgment against the land for the amount of the difference between two million dollars and $850,000; to the extent of such excess the property of these appellants and others is taken without due process of law; it is taken without warrant or justification. Page and Jones, Taxation by Assessment, § 466; *Davis v. Litchfield*, 145 Ill. 313, 33 N. E. 888, 21 L. R. A. 563; *Union Bldg. Ass'n v. Chicago*, 61 Ill. 439; *State ex rel. Lingenfelter v. Danville & North Salem Gravel Road Co.*, 33 Ind. 133; *Minnesota Linseed Oil Co. v. Palmer*, 20 Minn. 468; *Eno v. Mayor etc. of New York*, 68 N. Y. 214; *Asheville v. Wachovia Loan & Trust Co.*, 143 N. C. 360, 55 S. E. 800; *In re Mill Creek Sewer*, 196 Pa. St. 183, 46 Atl. 312; *Ankeny v. Palmer*, 20 Minn. 477. The property owner is given no right to be heard either as to the amount which may be charged against the property, or as to the equalized amount to be charged; the jury did not make the assessment, and the property owner is given no day in court upon an assessment on any question, except that of maximum benefits, which is not sufficient. Page and Jones, Taxation by Assessment, § 119; *Norwood v. Baker*, 172 U. S. 269; *Anderson v. Messenger*, 158 Fed. 250; *Fay v. Springfield*, 94 Fed. 409; *Murdock v. Cincinnati*, 39 Fed. 891; *Scott v. Toledo*, 36 Fed. 385; *Lower Kings River Reclamation Dis-*

*trict No. 531 v. Phillips*, 108 Cal. 306, 39 Pac. 630, 41 Pac.
835; *Hutson v. Woodbridge Protection District*, 79 Cal. 90,
16 Pac. 549, 21 Pac. 435; *Boorman v. Santa Barbara*, 65
Cal. 313, 4 Pac. 31; *Brown v. Denver*, 7 Colo. 305; *Allman
v. District of Columbia*, 3 App. D. C. 8.

*Hughes, McMicken, Dovell & Ramsey*, for appellant Puget
Mill Company.

*Turner & Hartge, Carkeek, McDonald & Kapp, Preston
& Thorgrimson*, and *Jay C. Allen*, for appellants Rines *et al.*

*Farrell, Kane & Stratton*, for appellant Columbia & Puget
Sound Railroad Company.

*Shorett, McLaren & Shorett*, for respondents.

MOUNT, J.—This is an eminent domain and special assess-
ment proceeding, prosecuted by the commissioners of Water-
way District No. 1, of King county, Washington, under the
provisions of ch. 11, Laws 1911, p. 11 (3 Rem. & Bal. Code,
§ 8166a *et seq.*), for the purpose of acquiring the right of
way for the straightening and deepening of the channel of
the Duwamish river, in King county. Thirteen thousand
parties are named as defendants. Against some of these de-
fendants, it is sought to take certain of their property for
the right of way. Against others, it is sought to determine
the maximum special benefits to the property within the dis-
trict.

The action was tried to a jury selected under the provi-
sions of the act above referred to. Verdicts were returned in
favor of the defendants whose property was taken and dam-
aged. A verdict was also returned finding the maximum bene-
fits to all other property within the district. Certain of these
defendants have appealed from portions of the judgment af-
fecting them. There are a number of appellants, presenting
six different appeals, all presenting certain questions in com-
mon; and some, presenting questions applicable only to them-
selves. We shall notice the errors assigned in their order.

The facts upon which assignments of error are based will be hereafter stated sufficiently to raise the questions presented.

The object of the improvement sought to be made by the commissioners is to straighten the channel of the Duwamish river between the termini of the district. The Duwamish river, as it runs through this district, makes certain bends. The length of the river between the termini of the district in its natural condition is nearly ten miles. Nearly half of this distance is obviated by the proposed improvement. In straightening the river, it is the purpose of the commissioners to obviate the bends in the natural channel by cutting a new channel from one bend in the river to the next nearest bend. One of these bends, known as the "Ox Bow Bend," is in the shape of a letter "U." The appellants Loeb and Moyses own property upon the shore of the river as it flows in its natural state which will be left by the improvement one-half mile away from the new channel of the river. The river flows in a northwesterly direction. It is proposed to put a dam across the natural channel at its southerly end near the artificial channel, and thus prevent fresh water from flowing down the natural channel by the property of Loeb and Moyses. The same is also true of other bends.

The object of the action is to determine, first, the damages or compensation for the property taken, together with the estimated cost of the whole improvement; and second, to determine the maximum amount of benefits which will be derived from the improvement and which will inure to the property within the district. The act upon which the proceeding is prosecuted provides, at § 26, that

"In case the damages or amount of compensation for such property, together with the estimated costs of the improvement, amount to more than the maximum amount of benefits which will be derived from said improvement, or if said improvement is not practicable, or will not be conducive to the public health, sanitation, welfare and convenience, or will not increase the public revenue, the court shall dismiss such proceedings." 3 Rem. & Bal. Code, §8190a.

The act also provides, at § 14 (Id., § 8177-2), that, if the court shall be satisfied by competent proof that the improvement is practicable and conducive to the public health, etc., and that the contemplated use is really a public use, and that the lands sought to be appropriated are necessary for the establishment of the improvement, the court shall call a jury of twelve persons to be impaneled to fix the compensation and to assess the damages and benefits; that the jurors at such trial shall make in each case a separate assessment of the damages which shall result to any person, corporation or company, or to the state, by reason of the appropriation and use of the lands for said improvement, and shall ascertain the amount of damages to be paid to said owners respectively; and that the jury shall further find the maximum amount of benefits per acre or per lot or tract to be derived by each landowner.

After an adjudication by the court to the effect that the improvement was practicable, etc., and that the contemplated use for which the property sought to be taken was really a public use, a writ of certiorari was prosecuted to this court and certain constitutional objections were therein raised. See *State ex rel. Puget Mill Co. v. Superior Court*, 68 Wash. 425, 123 Pac. 791. Prior to that time, a writ was prosecuted to this court from the order of the county commissioners authorizing the organization of the district. See *State ex rel. Bussell v. Abraham*, 64 Wash. 621; 117 Pac. 501. In these cases we reviewed most of the constitutional questions which are now sought to be relitigated upon this appeal. We shall therefore not notice those questions at this time.

This case is like the case of *Commissioners Commercial Waterway District No. 2 etc. v. Seattle Factory Sites Co.*, 76 Wash. 181, 135 Pac. 1042. In that case a proceeding was prosecuted in the same manner and for the same purposes that this proceeding is prosecuted. We there set out the principal features of the act of 1911 under which this proceeding was prosecuted, and we refer to that decision

without again restating the provisions of the act, except as the same may be necessary to a clear understanding of the questions decided herein.

All of the appellants in this proceeding objected to the manner of calling and impaneling the jury, and base error thereon. It appears that, when the case was called for trial upon the questions hereinbefore stated, the court selected one . jury to try the question of damages to the property taken, and also to assess the maximum benefits to the lands within the district. The appellants insisted that they were each entitled to separate juries and that they were not required to join in the peremptory challenge. By referring to the act, it will be seen that it provides for one jury to try these questions. It also provides that each person whose property is taken or damaged, and each person whose property is liable to assessment within the district, shall be made a party defendant. In other words, the statute provides for a special proceeding in these cases. The jury was required to, and did in this case, try out separately each case where property was taken or damaged. But as to the property specially benefited, all were tried together. The statute makes the case one case and provides for one jury to try the questions to be determined. There is no provision in the act with reference to peremptory challenge. Assuming, however, that the general statute governs in this case by reason of the fact that no special provision is made for such challenges, it is plain that it was not error when the court required the defendants to join in the challenge, because the statute makes the action one action. Even if the general statute with reference to challenges applies, it was necessary for all the defendants to join in the challenge. In *Manhattan Building Co. v. Seattle*, 52 Wash. 226, 100 Pac. 330, we said:

"The assignment based upon the fact that the defendants were required to join in their peremptory challenges is not well founded. The section of the statute providing for peremptory challenges (Bal. Code, § 4979; P. C. § 593), pro-

vides that when there are several parties on either side, they shall join in a challenge before it can be made. Construing this section we have held that defendants representing conflicting interests and appearing separately must join in a challenge before it can be allowed."

It follows, therefore, if this proceeding is a special one, no provision being made for peremptory challenges, no error can be based upon the fact that none were allowed. If the general statute applies, it was not error to deny the peremptory challenge unless all joined therein.

The appellants Loeb and Moyses requested the court to give an instruction to the effect that persons owning property upon a navigable stream have the right to the use of that stream for the purposes of approach, the construction of wharves, docks, and for all the usual purposes of navigation; and that, if the jury should find that either of such purposes would be lost as to Loeb and Moyses by reason of the improvement contemplated, the jury might consider such fact in determining the amount of damages. The court refused this instruction, but gave an instruction to the effect that the jury should not take into consideration the fact that the main channel of the Duwamish river might be diverted by reason of the improvement, and that the state or its subsidiary corporation, the waterway district, might claim the bed of the river as a diverted stream.

The waterway district was not seeking to take any of the property of these appellants. But it is claimed by them that, because the channel of the Duwamish river was changed at the Ox Bow bend so as to leave the property of these appellants one-half mile from the new channel, this was a damaging of their property on account of which they are entitled to be compensated. It is conceded in the case that the Duwamish river is a navigable river. These instructions raise the question, which is presented here by the appellants, whether the state takes title to the bed of navigable rivers

or whether, when the bed of the river is changed or reclaimed, the title to the bed belongs to the adjoining owners.

There are many conflicting opinions upon this question. But we think it is set at rest in this state by many decisions heretofore rendered. The constitution of this state, at § 1, of article 17, declares, that the state asserts its ownership to the beds and shores of all navigable waters in the state up to and including the line of ordinary high tide where the tide ebbs and flows, and up to and including the line of ordinary high water within the banks of all rivers and lakes. In *Shively v. Bowlby*, 152 U. S. 1, it is said:

"The foregoing summary of the laws of the original states shows that there is no universal and uniform law upon the subject; but that each state has dealt with the lands under the tide waters within its borders according to its own views of justice and policy, reserving its own control over such lands, or granting rights therein to individuals or corporations, whether owners of the adjoining upland or not, as it considered for the best interests of the public. Great caution, therefore, is necessary in applying precedents in one state to cases arising in another."

In *Grays Harbor Boom Co. v. Lownsdale*, 54 Wash. 83, 102 Pac. 1041, 104 Pac. 267, this court said:

"Legislation has proceeded upon one of two theories with reference to tide and shore lands. The one, that the state will recognize a riparian right in the upland owner and compel the public to subordinate its rights (except as to navigation) to his convenience. The other is that the title to all tide and shore lands is in the state, and may be sold, leased, or otherwise disposed of in aid of business and commerce, and without reference to the comfort and convenience of the upland owner. This state has asserted the latter doctrine. It will thus be seen that the case involves primarily the question of state policy. The state has a right to deal with its own property as its own. There is, therefore, no Federal question involved."

See, also, *Bilger v. State*, 63 Wash. 457, 116 Pac. 19; *Austin v. Bellingham*, 69 Wash. 677, 126 Pac. 59; *State ex*

*rel. Ham, Yearsley & Ryrie v. Superior Court,* 70 Wash. 442, 126 Pac. 945. In the case last cited, after reviewing the question as to the right of an upland owner to take water from a navigable lake, we said:

"No decision of this court has come to our notice dealing directly with a claim of water for irrigation made by an upland owner by reason of such land bordering upon navigable water; but it seems to us that our constitutional declaration of ownership, and former decisions touching the effect of that declaration, are clearly opposed to the contention that an upland owner can make lawful claim to the use of navigable water upon which his land borders, and rest such claim solely upon the ground that he has a common law right in such water by reason of his land bordering thereon, as against the state or one who appropriates such water in pursuance of the laws of the state."

And in *Commissioners Commercial Waterway District No. 2 etc. v. Seattle Factory Sites Co., supra,* at page 194, we said:

"It may be conceded that a description in a conveyance which bounds the land conveyed by a stream, if unnavigable, will be construed as meaning the thread of the stream, but where the description is specific in its language, naming the bank of the stream as the boundary of the land conveyed, we think the decided weight of authority is to the effect that the grantee's rights will not extend beyond such specified boundary so as to give him any right in the bed of the stream. [Citing authorities.] We understand it to be conceded in the briefs of counsel that Cedar river is unnavigable and that Black river is navigable. As to the latter, it is plain that the title to the bed thereof is not in appellant, but is in the state. Section 1, article 17, state constitution."

From these, and numerous other authorities which might be cited, it is plain that the state is the owner of the bed of the Duwamish river, being a navigable river, and that the appellants Loeb and Moyses have no interest therein. And the fact, if it is a fact, that their land borders upon the shore

of the river does not give them any rights, either in the bed of the stream or in the waters thereof.

The jury returned a finding to the effect· that the property of the appellants Loeb and Moyses would receive maximum benefits in the sum of $3,100. The maximum benefits for the whole improvement was the sum of more than $2,000,000; and the cost of the improvement was estimated to be $1,650,-000. It was conceded that King county had authorized a bond issue of $600,000 to be applied to the cost of the improvement. It is argued by the appellants that, because of the revenues which can and· will be obtained by the sale of dirt taken from the excavation of the waterway, and because of the sale of the bed of the stream, that the cost of the improvement will be reduced to about $850,000; that the assessment of maximum benefits against the land of the appellants will thereby be reduced to about $1,500; and that the excess between this and $3,100, as found by the jury to be the maximum benefits to this property will be assessed against the property of the appellants and will stand as a lien against it in double the amount actually necessary to make the improvement; that this, in substance is a taking of their property to that extent without due process of law.

The waterway statute, at § 14, provides that the jury shall find the maximum amount of benefits. From a reading of the whole act, it is apparent that this maximum amount of benefits is to be the basis upon which the assessments for the amounts actually needed will finally be made by the district commissioners. While it is true that this assessment is in the nature of a lien against the property to pay for the improvement, it is, in reality, only a determination of the benefits which the property will receive by the improvement, and limits the extent to which an assessment may be made. As stated in *Commercial Waterway District No. 2 v. Seattle Factory Sites Company, supra,* a trial upon the issue of maximum benefits is not a constitutional trial by jury. "The legislature would have satisfied all constitutional requirements in

that regard had it provided for the determining of maximum
benefits, upon due notice and hearing, by some board or
tribunal, entirely without the aid of a jury, as it has in
ordinary local assessment proceedings."

The fixing of the amount of the maximum benefits does
not, in our opinion, violate any rule of law, nor does it fix
upon the appellants' property any amount which becomes a
lien. That is done when the assessment is made by the com-
missioners, and then only to the extent of the cost. We are of
the opinion, therefore, that there is no merit in this conten-
tion. In fact, the less the improvement may cost, the less the
appellants will be required to pay; the benefits to their prop-
erty will remain the same. No authorities are cited to this
proposition by the appellants and it seems to us that the po-
sition of the appellants is not tenable.

The appellants argue that the court erred in hearing the
evidence of certain expert witnesses, for the reason that it is
shown that these witnesses were disqualified to testify as to
benefits and values. As we read the record, these witnesses,
upon direct examination, testified that they were acquainted
with the lands in question and with the values thereof, and
with the benefits that would accrue to the lands by reason of
the improvement. It is plain, we think, that this made their
evidence proper to be considered by the jury. If, upon cross-
examination, the witnesses disclosed a lack of knowledge as to
values, the facts disclosed by such cross-examination were
proper to be submitted to the jury for their consideration in
passing upon the weight of such evidence. But the com-
petency of the witnesses on direct examination was clearly
shown. *North Coast R. Co. v. Gentry*, 58 Wash. 82, 107
Pac. 1060.

In his instructions to the jury, the court said:

"In this case you have been permitted to view the premises
in question. One of the objects of the view was that you
might acquire such information as to the physical conditions
and characteristics there as would come to one through the

sense of seeing. What the jury sees they know; and another purpose of the view was that by putting you in possession of such information as would come to you through the sense of seeing you would be better thereby enabled to weigh, consider, and apply the testimony which would be introduced in the trial of the cause. In this case it is your duty to harmonize the testimony of the witnesses, if possible, so as not to impute false swearing to any witness. If this can be done consistently with the truth you should do so, but if you find it impossible to harmonize the testimony, and if you find further from the evidence of your senses of view and from the testimony on the stand, that any witness who has testified before you has wilfully testified falsely concerning any material fact in the case, then you have a right to disregard his entire testimony except in so far as you may find that the testimony of such witness is corroborated by other credible evidence or by facts and circumstances proved on the trial. And if in your judgment the evidence is conflicting as to the benefits you should resort to the knowledge gained upon your view as bearing upon the weight to be given to the various and conflicting statements and estimates."

It is contended by the appellants that the words, "What the jury sees they know," and the last sentence of this instruction, were erroneous. We think this instruction is substantially the same as one which was approved by us in *Seattle & M. R. Co. v. Roeder*, 30 Wash. 244, 70 Pac. 498, 94 Am. St. 864. See, also, *Murphy v. Chicago, Milwaukee & St. Paul R. Co.*, 66 Wash. 663, 120 Pac. 525.

A large number of other instructions are complained of as erroneous, but as the appellants rely upon the points which we have hereinbefore discussed and as we find no merit in the objections to the instructions, we shall not notice them further.

We pass now to the appeal of the Puget Mill Company. It appears that the Puget Mill Company owns about 900 acres of land which is included within the improvement district. The jury found that the maximum benefits to this tract of land would be $69,450. It is argued by the appellant that the improvement will not benefit this tract of land to any ap-

preciable extent and that, therefore, the finding of the jury was erroneous. It is sufficient to say that this question was tried to the jury. There was evidence to the effect that the land would be benefited in the amount claimed. There was also evidence and strong argument to the effect that it would not be benefited anything like the amount claimed. But this was a question which was properly submitted to the jury, and this court cannot say from the record that the amount of maximum benefits found exceeds the benefits which may accrue to the property. The other points presented by this appellant are decided in what we have already said heretofore.

The appellants Puget Sound Traction, Light & Power Company, the Seattle Electric Company, Boston Safe Deposit & Trust Company, and Old Colony Trust Company are interested in a tract of land bordering upon the river. This tract comprises seventeen and one-half acres used as one entire tract by the traction company lying on the right bank of the river, at a point which has been designated in the testimony as the "Big Bend." In 1906, the Seattle Electric Company began the construction upon this property of a steam electrical plant, which cost $945,000 to build, exclusive of the value of the land. This building was constructed for the purpose of generating a supply of electrical energy for the operation of its street cars in the city of Seattle. The plant consists of a heavy concrete building, practically indestructible, 75 feet wide, 220 feet long, and 70 to 80 feet high. As a part of the plant, there are two smokestacks, one of steel 110 feet high, and one of concrete over 265 feet high and 17 feet in diameter. The building is fitted with machinery capable of generating 17,000 kilowatts of electricity, or 22,000 horse power, at a pressure of 13,200 volts. These engines are operated by steam which, after passing through the engines, is condensed in a vacuum by a heavy flow of cold water. These engines cannot be operated in a manner to obtain their greatest efficiency without a continuous flow of cold water. The plant was put in operation in the spring of 1907, and was

continuously used thereafter until the spring of 1912, as one of the principal sources of supply of electric current by the Seattle Electric Company for the operation of street cars in the city of Seattle. Since that time, it has been and now is maintained as an auxiliary and emergency plant in the event of the breakdown or damage of any of its water power plants.

The plan of improvement proposed by the waterway commission is to excavate a canal in substantially a straight line from the upper to the lower end of the bend of the river upon which this property is located, and to construct a dam across the bed of the present channel at the upper end of the bend, so as to divert the flow of the river from its present natural channel into such canal or new channel, thereby diverting the whole of the flow of the river from in front of the plant of the traction company.

The trial court refused to permit these appellants to show that, after the water had been diverted from its present into its new channel, it would be necessary for them to construct a pipe line for a distance of five miles in order to procure fresh water for the purpose of operating its machinery, and would have to construct pumping stations and procure a right of way for such pipe line and stations; and that the cost to these appellants of procuring water for this purpose would exceed $444,000. It is alleged that this was error, and that the diversion of the Duwamish river from its natural channel into the artificial channel would cause great damage to these appellants. It is argued first, that the waters of the river were being used by the traction company for a public use, and that such waters could not be condemned for another public use; second, that the title to the traction company's property on which its plant is located extends into the bed of the Duwamish river and below the ordinary high tide; third, that since its title extends into the bed of the river, such flow cannot be diverted without the paying of just compensation on account of damages caused thereby; fourth, that the levy of an assessment upon the property within the district in

excess of the sum required to pay the cost of the improvement constituted a taking of property without due process of law; and fifth, that the action of the trial court in permitting counsel for the commissioners to attach to the forms of verdict submitted to the jury statements of what their witnesses testified the maximum benefits would be constituted reversible error. We shall notice these contentions in their order as stated.

It is first contended that, because the appellants' property was already devoted to a public use, that it cannot be condemned. The appellants cite cases to the effect that it is the established rule that property devoted to a public use may not be taken for another public use without legislative grant, either in express terms or by necessary implication. There can be no doubt about this being the rule. Section 7 of the Laws of 1911, p. 19, defining the powers of the waterway district provides, at subdivision "a," that the district shall have the right of eminent domain "with power by and through its board of commissioners to cause to be condemned and appropriated private property for the use of said organization in the construction and maintenance of a system of commercial waterways and make just compensation therefor: Provided, That the property of private corporations may be subjected to the same rights of eminent domain as that of private individuals: Provided further, That the said board of commissioners shall have the power to acquire by purchase all the property necessary to make the improvements herein provided for." 3 Rem. & Bal. Code, § 8172a.

Subdivision "d" of that section provides:

"In the accomplishment of the foregoing objects, the commissioners of such waterway district are hereby given the right, power and authority by purchase or the exercise of the power and authority of eminent domain, or otherwise, to acquire all necessary and needed rights of way in the straightening, deepening, or widening, or otherwise improving of such rivers, watercourses or streams." Id., § 8172a.

It seems to us that the power is there directly conferred, and at least by necessary implication, upon the district to acquire, either by purchase or condemnation, as the commission may see fit, *all necessary* and needed rights of way. We are of the opinion, therefore, that, in case of necessity, the waterway commission has at least implied authority under these provisions to take the property of the appellants. *Tacoma v. Nisqually Power Co.*, 57 Wash. 420, 107 Pac. 199.

These appellants argue that the title of the traction company to the property upon which its plant is located extends into the bed of the Duwamish river, and below the line of ordinary high water. On the trial of the case, there was introduced in evidence several plats of the lands. It appears that the tract of 17½ acres had been platted into lots and blocks known as Queen Addition and Queen Addition Supplemental. It is conceded that the appellants purchased the lots upon which their plant is located according to the recorded plats thereof. These plats, in the description of the additions, state that the boundaries begin at a certain point and run at a certain angle for a given distance "to the right bank of the Duwamish river, thence up stream with the meanders of said right bank." And in the supplemental plat, it is stated that the boundaries begin at a certain point and extend a certain distance in a given direction "to the meanders of Duwamish river." It is apparent from a reading of the descriptions upon these plats that the description of Queen Addition extended only to the right bank of the Duwamish river, and that the description of Queen Addition Supplemental extended to the meanders of the Duwamish river and along the meanders thereof. We are unable to determine from the record whether these meanders were in the bed of the river or upon the bank, but that fact is not important. The trial court was of the opinion that the title acquired by the appellants extended only to the bank of the river. We are inclined to the opinion that the trial court was right in this respect. If the property of the appellants

extended only to the bank of the river, and did not include the bed of the river, it is plain from what we have heretofore said that the appellants had no rights beyond the line of the property and no rights in the waters of the river. If these meanders are in the bed of the river, the appellants have no rights therein, because it is conceded that the river is a navigable stream. In *United States v. Chandler-Dunbar Water Power Co.*, decided May 26, 1913, Advance Sheets U. S. Supreme Court, July 1, 1913, page 667, the supreme court was considering the right of the upland owners to the flow of the waters of a navigable stream, and it was there said:

"But whether this private right to the use of the flow of the water and flow of the stream be based upon the qualified title which the company had to the bed of the river over which it flows, or the ownership of land bordering upon the river, is of no prime importance. In neither event can there be said to arise any ownership of the river. Ownership of a private stream wholly upon the lands of an individual is conceivable; but that the running water in a great navigable stream is capable of private ownership is inconceivable."

And in *Scranton v. Wheeler*, 179 U. S. 141, at page 163, the court said:

"The primary use of the waters and the lands under them is for the purposes of navigation, and the erection of piers in them to improve navigation for the public is entirely consistent with such use, and infringes no right of the riparian owner. Whatever the nature of the interest of a riparian owner in the submerged lands in front of his upland bordering on a public navigable water, his title is not as full and complete as his title to fast land which has no direct connection with the navigation of such water. It is a qualified title, a bare technical title, not at his absolute disposal, as is his upland, but to be held at all times subordinate to such use of the submerged lands and of the waters flowing over them as may be consistent with or demanded by the public right of navigation . . . If the riparian owner cannot enjoy access to navigability because of the improvement or navigation by the construction away from the shore line of works in a public navigable river or water, and if such right of ac-

cess ceases alone for that reason to be of value, there is not, within the meaning of the constitution, a *taking* of *private* property for public use, but only a consequential injury to a right which must be enjoyed, as was said in the *Yates* case, 'in due subjection to the rights of the public.' "

And in *McKeen v. Delaware Division Canal Co.*, 49 Pa. St. 424, it was said:

"Every one who buys property upon a navigable stream purchases subject to the superior rights of the Commonwealth to regulate and improve it for the benefit of all her citizens."

In *Zimmerman v. Union Canal Co.*, 1 Watts & S. (Pa.) 346, it was said:

"It seems, however, to be but in accordance with the decisions made upon the subject, that it is one of the incidents to holding property on one or both sides of a navigable stream that the party is subject to, any inconvenience that may arise from deepening the channel, or otherwise improving the navigation of such stream, is to be submitted to, without any right to damages therefor, except as such improvement may flood or drown their lands."

See, also, *Watkins v. Dorris*, 24 Wash. 636, 64 Pac. 840, 54 L. R. A. 199; *Wilson v. Oregon-Washington R. & Nav. Co.*, 71 Wash. 102, 127 Pac. 847.

We are of the opinion, therefore, that the court properly excluded evidence tending to show the cost or the necessity for obtaining water at some other place and obtaining rights of way therefor, because the appellants have no interest in the waters of the navigable river which they can enforce against the state or its agency.

It is next argued that the levy of assessments for maximum benefits is void for the reason that it is grossly in excess of the estimated cost of the improvement. It is unnecessary to consider this question further. It is the same as hereinbefore determined.

It is next argued that the finding of the jury of the maximum benefits is void because the court permitted statements of the benefits claimed by the respondents to be submitted to

the jury. We have seen above, in so far as the finding of the jury of maximum benefits was concerned, that the jury was not a constitutional jury for that purpose. There were some 10,000 different pieces of land included within the assessment district. It was, of course, impossible for the jury to remember what the witnesses had testified with reference to the special benefits to each of these tracts. The court therefore permitted the estimates of the witnesses to be taken by the jury to the jury room. The jury was instructed that these memoranda were not in any sense to be considered as evidence, but were given to them as aids to their recollection of the testimony in case they needed to refresh their recollection. We think these estimates were of no greater moment than the allegations of the commissioners as to what the maximum benefits would be, which was held in *Commissioners Commercial Waterway District No. 2 etc. v. Seattle Factory Sites Co., supra,* not to be prejudicial. In *Higgins v. Los Angeles Gas & Elec. Co.,* 159 Cal. 651, 115 Pac. 313, the supreme court of California held that it was not error to permit the jury to take with them and use in their deliberations any exhibit where the circumstances call for it, with a cautionary instruction as to the nature and use which they shall make of the exhibit. We think there was no prejudicial error in this.

It is next argued that the finding of the jury of the maximum benefits is void for the reason that the appellants were not granted a separate trial upon that question. It is sufficient answer to this to say that the statute does not require a separate trial upon these questions. It in substance requires that the benefits shall be determined by the jury in one proceeding; and it would therefore be improper to award a separate hearing upon each assessment of maximum benefits. There is no merit in this assignment.

On the appeal of Columbia & Puget Sound Railroad Company, in addition to the constitutional questions and questions hereinbefore discussed, it is contended that the maximum benefits assessed against the right of way of the railroad com-

pany is excessive. It appears that the right of way of this appellant was located between the rights of way of two other railway companies running through this improvement district. And it is argued that, by reason of the fact that this appellant, in order to obtain any business, will have to cross over the right of way of at least one of the other railway companies, it therefore cannot be benefited by the improvement. It is also contended that this right of way is used exclusively for railway purposes, and is not benefited by the improvement. It is sufficient answer to this contention to say that the maximum benefits assessed by the jury has evidence in the record to support it; and the fact that the right of way is at present being used for railway purposes only is no objection to its assessment for benefits. In *Great Northern R. Co. v. Seattle*, 73 Wash. 576, 132 Pac. 234, we said:

"In the case cited [*Northern Pac. R. Co. v. Seattle*, 46 Wash. 674, 91 Pac. 244, 123 Am. St. 955, 12 L. R. A. (N. S.) 121] we further held that property abutting upon a local improvement, and devoted to railroad purposes, might be assessed for benefits conferred, and that such use would not relieve it from liability to assessment, the controlling question being, not whether the present use would be benefited, but whether the property itself, irrespective of such use, would be benefited."

This is decisive of the question presented upon behalf of this appellant.

On the part of the appellants Rines, et al., in addition to the questions already hereinbefore decided, it is argued that the assessments upon unplatted property was greater than that upon platted property by reason of the fact that no deductions were made for streets. The act under which this proceeding is maintained provides, at Id., § 8177-2, that the jury "shall further find a maximum amount of benefits per acre or per lot or tract to be derived by each of the land owners." Of course this means that the jury shall determine the maximum benefits upon the property as it appears at the time, and it is not for the jury to consider whether acreage or

tracts will thereafter be platted. It is their duty to determine the maximum benefits that would accrue from the improvement to the property as it was at that time, irrespective of whether it might or might not be platted in the future. This is all the jury did in this case. We think there is no merit in the point raised.

Upon the appeal of the Estate of Harriett Macauley, deceased, it is argued that the verdict awarding this appellant damages for property taken was contrary to the evidence. It is conceded by the appellant that the evidence is conflicting upon the amount of damages sustained. In such cases, we have held that we will not disturb the verdict of the jury upon questions properly submitted. *Bartlett v. Plaskett*, 73 Wash. 449, 131 Pac. 1125.

The other questions presented by these appellants are hereinbefore decided. We find no error in the record.

The judgments appealed from are therefore affirmed. The costs recoverable by the respondents will be taxed against the six appellants equally.

CROW, C. J., PARKER, and MORRIS, JJ., concur.